# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* LEONARD JULES KERPELMAN

[Misc. (BV) No. 7, September Term, 1980.]

*Decided December 29, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Leonard Jules Kerpelman,* in proper person, respondent.

*Walter D. Murphy, Jr., Assistant Bar Counsel,* for petitioner.

COLE, J., delivered the opinion of the Court.

Leonard Jules Kerpelman, a member of the bar of this State, was charged by the Attorney Grievance Commission

with professional misconduct. Pursuant to Maryland Rule BV 9, § b, this Court directed that the charges be transmitted to and heard by Judge Calvin R. Sanders of the Circuit Court for Montgomery County. Being advised that Judge Sanders would not be able to participate in the matter, the case was reassigned to Judge Joseph M. Mathias of the same court. A hearing was conducted by Judge Mathias, after which he concluded that there was clear and convincing evidence that Kerpelman had violated several disciplinary rules. Kerpelman filed some forty-one exceptions to these findings. We shall summarize the facts and discuss the exceptions that are pertinent to our disposition.

The central figures involved here, Kerpelman and Dr. Leslie F. Major, first met in October, 1977, at a meeting of Fathers United.[1] The two discussed child custody, alimony, and divorce problems which Major was experiencing as the result of domestic difficulties with his wife. Major was at this time being represented by another attorney, Jackson Brodsky. Three or four weeks later, Major called Kerpelman and the two discussed whether Kerpelman would represent Major and what the fee arrangement would be. According to Major, Kerpelman said that he would charge a $2,000 retainer and $70 per hour, but that the $2,000 would probably just about cover the total costs. Kerpelman, on the other hand, said that he told Major that there would be a retainer that would represent the minimum fee and that there would be a $70 fee as an hourly rate. According to Kerpelman, he told Major that the $2,000 was only a retainer and that the final fee would be greater if the case was successful. Both parties agree that the $2,000 was paid before the trial and that Major thereafter sent several notes to Kerpelman about various aspects of the case and witnesses. Kerpelman apparently did not interview any of the witnesses.

During the course of the trial in the Circuit Court for Montgomery County, Kerpelman presented Major with a

---

1. Fathers United is an organization whose objectives include protecting paternal rights in domestic cases.

written fee agreement,[2] the amount of which was to be determined by results obtained and a variety of other factors. Major testified that the first time he saw this agreement was at a crucial point during the final day of the trial when a favorable witness was being cross-examined by the other side. Major alleged that he told Kerpelman at that time that

---

2.

### AGREEMENT AS TO FEE

To the Client of Leonard J. Kerpelman, Attorney

Sir:

You have retained Mr. Kerpelman to represent you in your case and you and he have agreed on a certain "retainer fee."

Your employment of Mr. Kerpelman by the payment of the retainer fee denotes a request, hereby acknowledged by you, to him, that he do all that is reasonably necessary and proper to successfully conclude your case in your favor.

The retainer fee will not be the entire fee in the case.

The principal reason for this is, that at this point, it is impossible for the attorney to know what the course of the case will be, how much work will be involved on his part, and with what success he will be able, because of his knowledge and skill, to carry the matter toward a conclusion.

Therefore, at the close of the case, a review will be made by Mr. Kerpelman, and the final fee in the matter will be assessed, according to the following criteria, which are among those set forth by the sources stated, concerning the fixing of a fair and reasonable attorney's fee:

1. As stated in Vol. 7, Corpus Juris Secundum (a legal encyclopedia), under the topic "Attorney and Client," in Sec. 191(a):

In determining what is a reasonable attorney's fee or allowance for legal services rendered, many and varied elements or factors are to be considered. Among the principal elements or factors to be considered are the amount and character of the services rendered, the nature and importance of the litigation in which the services were rendered, the degree of responsibility imposed on, or incurred by, the attorney, the amount of money affected by the controversy, the degree of professional ability, skill and experience called for and exercised in the performance of the services, and the professional character, qualifications, and standing of the attorney. (Also) the benefit or result secured for the client is likewise an important element to be considered in determining the value of the attorney's services.

The success or failure of an attorney's services is not the sole test of the value of his fees, but may be considered as a factor in determining such value.

2. The American Bar Association Code "Canons", factors to be considered in fixing a fee:

he wanted to discuss the matter but that Kerpelman said to sign it right then. To avoid getting into a fee dispute that might jeopardize the successful outcome of his case, Major signed the "new agreement."

Kerpelman's version is somewhat different. He alleged at the hearing before Judge Mathias that he mailed the agreement to Major, who brought it to the trial signed. In a prior deposition for another proceeding Kerpelman contradicts this by saying that he gave the new agreement to Major in Kerpelman's office. He denies that he presented the agreement to Major for the first time during the trial.

The trial lasted for three days and Major was awarded custody of his children and required to pay no alimony. Kerpelman kept no records of the time he spent on the case but estimated it variously at 28 hours or 38.8 hours. Kerpelman subsequently sent Major a bill for $8,500.00 based, he said, on the successful outcome of the case. Major protested, saying that the additional $8,500 was not the sum they had agreed upon, and Kerpelman filed suit for the fee.

The following are excerpts of the exchange between Kerpelman and Major regarding the increased bill. Major's first reply:

> I first contacted you in late October and ... you stated your fee at $70.00/hour and when I had some doubts if I could afford your (sic) you assured me that you worked very efficiently and that the

---

(1) The time and labor required.

(4) ... The amount involved and the results obtained.

(7) ... The experience, reputation, and ability of that lawyer performing the services.

Note that time spent is not the only factor, but may be only a minor factor. The results will be important. *Success* will be important. [Emphasis in original].

The above is my agreement as to the setting of the final fee in my case.

                                               (Client)

Dated: _____

PLEASE SIGN AND RETURN

$2000.00 retainer you figured would cover the expenses of a contested divorce and custody scheduled for May 8, 9, 10.

\* \* \*

Based on this, I retained you and paid the $2000.00 retainer over the next three months . . . You did in fact work very efficiently. We met only once on May 5, for 1½ hours. We talked on the phone several times, totalling one hour. You issued one request for an earlier court date and answered Ms. Groner (sic) objection to that request. Court was in session for 2 hours on Monday, 6 hours on Tuesday and 6 hours on Wednesday. It appeared to me that the retainer would more than cover the time spent reimbursable at $70/hour as we had agreed upon.

\* \* \*

The other issue I would like to address has to do with the incident on Wednesday, May 10th, when you slid a piece of paper over to me during the trial saying I should sign it. It amounted to a vague contingency agreement. Since I was in no condition to concentrate on it (sic) ask you questions, I suggested we wait untill (sic) after recess to discuss it. You made it quite clear that you wanted me to sign it then. Considering the situation, *i.e.,* that this was the most crucial part of the trial where I was most dependent on your working in my interest, I did not feel I could argue with you or allienate (sic) you at that point. However, to give an analogy from my profession, it would be like having you come to me for an operation, having agreed on the fee and then when I had you on the operating table ask you to sign an agreement based on outcome you would hardly be in a position to negotiate, particularly if I had already started the operation and you had no choice but to continue with me. I hope you can

appreciate this analogy and place yourself in my position.

The respondent's abbreviated response to Major's letter of protest was:

Your letter of June 5th is nonsense.

My retainer is, as explained, the *bottom* possible cost; my final fee is based, *among other things,* on result.

Major responded:

My letter of June 5th clearly and accurately states our verbal agreement and the extent of our contact. Your attempt to change the agreement on the last day of the trial while court was in session was highly offensive and manipulative.

\* \* \*

If you wish to pursue this matter please send me a bill itemizing your hours explicitly and a copy of the paper you had me sign May 10th.

Kerpelman, even before receiving the above letter, got off another response to his client:

I thought you would be so overjoyed at having overachieved, in your case, by having acquired results far beyond any hope or expectation of achievement, that you would fall all over yourself paying my bill immediately.

No alimony! Custody of the children! A miraculous achievement for Montgomery County, although it would have been almost equally miraculous anywhere else.

You are too much.

Major responded, in part:

In response to your letter of June 14, 1978, I am of

course overjoyed at having custody of my children. I am also grateful for your efforts in helping me achieve this. I would liked to have been able to maintain this feeling of appreciation, but your attempt on May 10th to unilatterly (sic) change our agreement was a grievous breach of trust. I stand by our original agreement as outlined in my last letter to you. If you would do so also, we could rectify the situation to some degree. In the meantime, I have retained another lawyer for any further proceedings in my case. His name is Reginal (sic) Bours III, 30 Courthouse Sq., Suite 301, Rockville, MD. 20850.

The next letter from Kerpelman to his client, dated June 22, 1978, responds to Major's letter of June 15. Pertinent excerpts are:

Your letter of June 15 is entire nonsense and misstates the facts completely.

Kindly pay my bill at once.

\* \* \*

You were given a copy of the paper you requested already, but I enclose another copy for your information.

As we agreed and as you clearly understood my bill was never to be based on hours spent. It was to be based on the *value* of the services, the difficulty of achieving the end in view and the other matters set forth in the agreement. [Emphasis in Original].

Major retained another lawyer and counterclaimed, alleging fraud. Kerpelman thereupon filed an amended complaint raising the fee from $8,500 to $23,000.[3] The reason for the change, according to Kerpelman, was that his

---

**3.** Kerpelman made no showing of exactly where the $23,000 figure came from. Regarding the matter, Kerpelman testified, in part, that

first demand was only a modest fee and, since Major was claiming that the agreement was null and void, he applied all the factors relevant to the *quantum meruit* recovery. This case was tried before a jury, which found for Major on both Kerpelman's claim and Major's counterclaim but awarded only nominal damages of $1.00.

At the hearing before Judge Mathias, Bar Counsel called Jackson Brodsky as an expert witness regarding domestic legal practice. Mr. Brodsky testified that the $23,000 figure was "clearly excessive," basing his opinion on DR 2-106 which defines a fee as being clearly excessive "when and after a review of the facts a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." Kerpelman called Judge John J. Mitchell, the presiding judge in Major's domestic case, who testified that the $23,000 was "pretty high" but not outrageous.

Judge Mathias found that Kerpelman had violated the following disciplinary rules:

DR 1-102 — Misconduct

(A) A lawyer shall not:

\* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

DR 2-106 — Fees for Legal Services

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

---

the reasonable fee I totalled up was $125,000 but I figure I'm not in that league. I'll just charge the man $25,000 and he already paid me two so I sued him for $23,000.00

DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally

\* \* \*

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

DR 7-102 Representing a Client Within the Bounds Of The Law.

(A) In his representation of a client, a lawyer shall not:

\* \* \*

(5) Knowingly make a false statement of law or fact.

Before us Kerpelman made forty-one exceptions to the findings of Judge Mathias.[4] As several involve related issues and can be treated as groups we will discuss them as groups where applicable rather than seriatim as presented by Kerpelman.

Several of the exceptions can be characterized as presenting no more than bald assertions or editorial comments on the proceedings or the people involved. Kerpelman, in exception number 6, suggests that the findings of the trial judge are "a thinly disguised effort to deny" him his rights to free speech and due process. He does not allege in what manner his freedom of speech has been impaired and since the record reflects no basis for the allegation it is without merit. In exception 11 he claims that Judge Mathias was hand selected to find him guilty. In exception 22 he claims that the Attorney Grievance Commission and its staff are "creatures of this Court" and "are completely under the thumb of this Court and exist only to do this Court's bidding," i.e., to find him guilty. In number

---

4. For the convenience of the reader we have set forth Mr. Kerpelman's exceptions verbatim in the appendix to this opinion.

he protests that proof of the Commission's bias can be found in the fact that it has never lost a case before this Court. In number 28 Kerpelman says that the grievance system set up by this Court lacks checks and balances which is a denial of due process. In exception 29 he says in effect that this Court has delegated its rule making power thereby giving the Attorney Grievance Commission unbridled control over the practicing bar. In exception 33 he alleges again a conspiracy between the Chief Judge of this Court and Judge Mathias. In number 34 Kerpelman announces his intention to supplement these exceptions if he so desires. Not only are the above exceptions unsupported but they are specious and frivolous and deserve no further comment.

Kerpelman also makes several evidentiary exceptions. He proposes in exceptions 2, 3, 4, 5, 30, and 40 that the findings "do not meet the constitutional standard implicit in the requirement of 'clear and convincing evidence.' " He cites an overruled federal case for support, *Terrazas v. Vance,* 577 F.2d 7 (7th Cir. 1978), *rev'd* 444 U.S. 252, 100 S.Ct. 540, 62 L. Ed. 2d 461 (1980); *reh. den.* 445 U.S. 920, 100 S.Ct. 1285, 63 L. Ed. 2d 606 (1980), which is inapposite in any event.

We note that the requirement that there be clear and convincing evidence before an attorney may be disciplined is imposed by virtue of Rule BV 10, § d of the Md. Rules. Moreover, we find nothing in the record to suggest that Judge Mathias did not correctly apply the clear and convincing standard here. Judge Mathias was charged with the responsibility of hearing and seeing the witnesses, observing their demeanor and manner while testifying, assessing the weight of their testimony, and determining the probative value of the exhibits admitted into evidence. This he accomplished, explicating the bases for his results in admirable fashion. The evidence was clearly sufficient to support his conclusions.

Exceptions 7 (Brodsky was biased and too old to testify), 8 (Judge Mitchell's testimony was not properly weighed), 9 (Brodsky's opinion was based on an improper standard), 10 (reiterating exceptions 7 and 9), and 21 (the circuit court's belief of some parts of Major's testimony and not others was

contradictory) are also evidentiary type exceptions. For the reasons discussed above they are likewise without merit.

Kerpelman raises a due process question in at least seventeen of his forty-one exceptions. In exceptions 13, 22, 26, and 28 Kerpelman alleges that the use of judges as masters, the use of the clearly erroneous rule as to masters, and the attorney disciplinary procedure itself are denials of due process. There is, again, no support presented for these contentions and they are completely without merit. *See Attorney Grievance Commission v. Kerpelman*, 288 Md. 341, 377-78, 420 A.2d 940 (1980).

In exceptions 15, 16, and 17 Kerpelman contends that he was convicted solely on the basis of the testimony of a disgruntled client, that this cannot rise to the clear and convincing standard, and that this is a denial of due process. The first answer to this is that the factual premise is palpably untrue. Kerpelman was found to have violated the disciplinary rules based on the exhibits submitted by Bar Counsel, and the testimony of Major, Kerpelman himself, Brodsky, and Judge Mitchell. The second answer to this is that we have already held that a client's testimony, without more, is sufficient to satisfy the standard. *Attorney Grievance Commission v. Kerpelman, supra,* 288 Md. at 360-61.

Exception 33 alleges that Chief Judge Murphy of this Court and Judge Cahoon of the Circuit Court for Montgomery County conspired with one another to select Judge Mathias as part of a plot or scheme to see that Kerpelman was convicted of the disciplinary charges. Kerpelman characterizes this conspiracy as a belief. He offers no evidence to support his contention — none appears in the record and we shall infer none. There has been no denial of due process and this contention is without merit.

In exceptions 35, 36, and 37 Kerpelman alleges due process violations in that all the Montgomery County judges should have been disqualified; that the case should have been transferred out of Montgomery County; and that Judge Mathias should have recused himself. These are bald assertions without any precedential or evidentiary support.

Kerpelman was heard on this matter before Judge Mathias, who ruled against Kerpelman's motions. There is nothing in the record to indicate Judge Mathias was clearly erroneous. These exceptions are without merit.

In exceptions 38 and 39 Kerpelman alleges as a due process violation that the members of the Court of Appeals are not familiar with the trial transcript. We reject this allegation because it is not based on fact. Moreover, Kerpelman did not support this argument by referring to portions of the record that he desired the Court to read. At argument before us he made no attempt to indicate where in these proceedings he was prejudiced. A full and fair opportunity to be heard has been afforded to Kerpelman and he cannot assign his inability or unwillingness to direct the Court to pertinent segments of the record as a denial of due process. This contention is without merit.

In exception 14 Kerpelman challenges the provision of appeal by way of exceptions as an unconstitutional denial of due process. He proposes no reason why and we can find none. A respondent may and, indeed, is most heartily encouraged to, include citations of authority and references to whatever materials are before the Court to support his position. That Kerpelman was unable to or unwilling to avail himself of this opportunity does not reflect on the process itself. This contention is without merit.

Kerpelman excepts in Number 18 to Judge Mathias's ruling that a fee agreement from another law firm was inadmissible as evidence. The form or content of Kerpelman's agreement was not at issue. The evidence was irrelevant and Judge Mathias correctly excluded it. Even if the evidence was admissible, Kerpelman has failed to show how he was in any way injured by its exclusion. This contention is without merit.

In exception 20 Kerpelman decries his inability to be heard by a jury in these proceedings. "[D]isciplinary proceedings against attorneys, in the absence of a rule or statute to the contrary, are not encompassed within the constitutional guarantees of trial by a jury, be that guar-

antee state or federal." *Attorney Grievance Commission v. Kerpelman, supra,* 288 Md. at 356. This contention is without merit.

In exceptions 12, 23, and 27 Kerpelman challenges the authority of this Court to formulate rules for the Bar and to set up and administer the attorney disciplinary proceedings. "The superintending power of courts over their bars is deeply ingrained in the system of law which we inherited from our forebears at the time of the American Revolution. It has continued to this day." *Id.* at 375. This contention is without merit.

Kerpelman also makes three allegations of violations of the Equal Protection Clause of the Fourteenth Amendment: exceptions 19, 24, and 31 (alleging Kerpelman has been unfairly singled out for prosecution). Kerpelman makes no attempt to show in what manner he has been treated differently than any other attorney in this State. These contentions are without merit.

In exception one Kerpelman maintains that venue was improperly and unconstitutionally laid. Maryland Rule BV 9, § b specifically authorizes this Court to assign venue to any court in this state and Kerpelman cannot and does not maintain that the chosen forum was vexatious and oppressive out of all proportion to his convenience. *See Piper Aircraft Company v. Reyno,* 450 U.S. 909, 102 S. Ct. 252, 70 L.Ed.2d 419 (1981). This contention is without merit.

In exceptions 32 and 41 Kerpelman charges that the Chief Judge of this Court should disqualify himself because of an article authored by Kerpelman appearing in the "Charleston West Virginia Gazette — Mail Newspaper." This exception is patently absurd.

Interspersed throughout these exceptions Kerpelman has made the persistent accusation that these proceedings are a guided and concerted effort by this Court, the judges of the Circuit Court for Montgomery County, and the attorneys of the Attorney Grievance Commission to secure a guilty verdict against Kerpelman. He offers no proof and such contention is frivolous.

Having addressed and found no merit in Kerpelman's exceptions, we now turn our attention to the conclusions of the trial court. Judge Mathias found by clear and convincing evidence that

> [e]ither the respondent quoted a fee based on an hourly rate of $70 knowing that he was not going to abide by such an arrangement if the case was won or, having won the case, decided the time was propitious to extract a larger fee than had been agreed upon.[5] Engaging in such conduct involves dishonesty and deceit and is prejudicial to the administration of justice and furthermore reflects on the respondent's fitness to practice law.

We concur in that result. We do not believe, however, that this is the kind of deceit that merits automatic disbarment. This is not to say we rule out disbarment as a sanction in all cases involving an attorney's misrepresentation of his fee, nor do we mean to convey anything but antipathy for this type of conduct. Based on the facts of this case, however, this violation of the disciplinary rules by itself does not call for disbarment.

Judge Mathias also found that Kerpelman had tried to extract a clearly excessive fee from his client, violating Disciplinary Rule 2-106(A). Using the higher of Kerpelman's time estimates, 38.8 hours, and the hourly fee Kerpelman agrees that he quoted to Major, $70, the most Kerpelman could have charged for this case was $2,716. Even using the $125 per hour figure referred to by Judge Mitchell in his testimony, Kerpelman could only have charged $4,850. Yet Kerpelman ultimately demanded a total fee of $25,000.

The Code of Professional Responsibility, DR 2-106(B) provides:

> B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would

---

5. Note the language of respondent's letter of June 4, 1978: "I thought you would be so overjoyed at having overachieved . . . that you would fall all over yourself paying any bill immediately."

be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

In the instant case Jackson Brodsky, a practicing attorney who was qualified as an expert in domestic relations matters at the disciplinary hearing, testified that in his opinion Kerpelman's fee was clearly excessive. Comparing the evidence with the guidelines of the Code of Professional Responsibility, we must agree. Kerpelman testified that the case took no more than 38.8 hours; the matter was not one that precluded other employment; there were no straining time limitations imposed; and these were not the type of fees customarily charged in Montgomery County. Keeping before us the premise that the legal profession is a branch of the administration of justice and not a mere money-getting trade, we cannot and shall not condone this type of practice.

Judge Mathias also found Kerpelman guilty of failing to

carry out a contract of employment and knowingly making a false statement of fact by entering into a contract to represent his client for $70 an hour and then failing to abide by the agreement by representing to his client that his fee would be calculated on a *quantum meruit* basis; violations of DR 7-101 (A) (2) and DR 7-102 (A) (5) respectively. These are based on Judge Mathias's factual finding that Kerpelman first represented his fee as a $2,000 retainer and $70 an hour. Due to Kerpelman's equivocations, the correspondence between Kerpelman and Major, and the opportunity of the trial judge to observe the witnesses, we cannot call this finding unsupported by clear and convincing evidence. We, therefore, affirm the conclusions of Judge Mathias on these two violations.

Having concluded that Kerpelman was guilty of violating the four aforementioned disciplinary rules, we must now turn our attention to the sanction to be imposed. The Attorney Grievance Commission has recommended disbarment. As we noted, this is not a case of automatic disbarment. However, in Kerpelman's thirty-one years of practice in this State, this is the second time he has been found guilty of professional misconduct. *See Attorney Grievance Commission v. Kerpelman, supra.* If we could conclude that this was a pattern of conduct we would not hesitate to disbar. The conduct referred to in this case, however, took place while the investigation was being conducted in the previous case and prior to any proceedings therein. For this reason we will not infer such a pattern.

Weighing heavily against Kerpelman in this case is the manner in which he sought to raise his fee. He waited until a propitious moment during the trial when its outcome looked favorable and compelled his client to sign the agreement without an opportunity for discussion. This is gouging of the lowest and most under-handed order that will not be tolerated among the members of the bar of this State. It is conduct which brings the legal profession into disrepute and against which the public is entitled to protection.

After reviewing the types of misconduct involved here, we conclude that the proper sanction is a suspension. Having

agreed on suspension rather than disbarment as the proper sanction, we add that *any* similar misconduct proved against this attorney will reflect most adversely upon his fitness to practice law in this State.

Leonard Jules Kerpelman shall stand suspended from the practice of law in this State for a period of one year accounting from October 6, 1982.[6] He shall stand suspended beyond that date unless and until all costs incurred in connection with this proceeding are paid in full.

> *It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule BV15 C for which sum judgment is entered in favor of the Attorney Grievance Commission against Leonard Jules Kerpelman.*

---

6. Kerpelman was suspended as a result of our decision in Attorney Grievance Commission v. Kerpelman, 288 Md. 341, 377-78, 420 A.2d 940 (1980) for two years effective October 6, 1980. The suspension in this case is consecutive thereto.

## APPENDIX

Because of the unusual nature of some of Mr. Kerpelman's exceptions and our categorizations and summarizations of them we have set out the exceptions in full as they were presented to this Court.*

### EXCEPTIONS TO "FINDINGS OF FACT AND CONCLUSIONS OF LAW"

Now comes the Respondent, LEONARD J. KERPELMAN, in Proper Person, and for exceptions to "Findings of Fact and Conclusions of Law" says:

1. Venue was improperly laid, denying the Respondent of a fundamental constitutional right under the federal Constitution, Amendments Five and Fourteen, and under the Maryland State Constitution.

2. The Findings are against the evidence.

3. The Findings are against the weight of the evidence.

4. The Findings do not meet the constitutional standard implicit in the requirement of "clear and convincing evidence". See particularly the federal case of *Terrazas v. Vance,* 577 F.2d 7, and cases cited therein, and my Petition for *Certiorari* enlarging the argument thereof.

5. The Findings are actually beyond credibility as being totally unsupported by the balance of the evidence under any "clear and convincing" standard and represent a mere effort to silence the Respondent for his views on the justice system in Maryland and for his vigorous representation of persons abused by that system or dissatisfied with it because they do not receive fair treatment under it, all of which the Respondent has made known as his opinion.

6. The Findings are a thinly disguised effort to deny the Respondent his right of free speech and his right to Due

---

* We have reproduced the document exactly as presented by Mr. Kerpelman and have not attempted to make corrections, grammatical or otherwise.

Process under, respectively, the First, Fifth, and Fourteenth Amendments to the United States Constitution as well as provisions of the Maryland Declaration of Rights.

7. The Findings simply ignore the bias, prejudice, and ignorance of the witness Brodsky, as well as his condition of debilitation due to age which was quite apparent at the taking of his testimony.

8. The Findings ignore the clearly stated opinion of the expert witness Mitchell and which should be given greater credence than the normal witness's opinion by this Court due to this Court's pronouncements upon the "ability" of a judge to express special knowledge upon the question of proper attorneys' fees, and particularly as measured against the "clear and convincing" standard.

9. A simple examination of the cross-examination testimony of the witness Brodsky indicates that he erroneously based his opinion concerning the excessiveness of the fee upon "time" alone, or alternatively that an expression of an opinion based upon "time" alone has no provative value whatsoever in this case since the fee charged was not by "clear and convincing" evidence based on time alone but upon those factors listed in the very DR Rules which are herein referred to. See Brodsky's cross-examination, particularly the latter part thereof.

10. Brodsky's testimony was a mere effort to ingratiate himself with the court as is apparent from his entire testimony; and his "opinion" was based on a mere perusal of the file in the case which is not an adequate basis for such opinion aside from the fact that he based his opinion upon the amount of time spent alone.

11. The so-called "master" or "examiner" in the person of Judge Mathias was hand selected, as the preliminary motions show, and particularly the testimony connected therewith, to deliver a guilty verdict, and his selection, perhaps by the instrumentality of Cahoon, was not such random selection as would be expected to produce a fair result, but was a selection "made with an uneven hand" and with the purpose of producing a conviction.

12. The court proceeding is itself unconstitutional representing a usurpation of legislative power by this Court and, as well, a usurpation of constitutional power reserved to the people of this state who alone have the power to set up a court; the proceedings represent a usurpation of the judicial power delimited by Maryland Constitutional Article IV.

13. This Court's clearly "erroneous" rule as to "masters" is an unconstitutional denial of Due Process under the Fifth and Fourteenth Amendments of the United States Constitution.

14. The provision of an "appeal" by way of "exceptions" only is not a Due Process appeal but is arbitrary and limited and a denial of Due Process rights under the Fifth and Fourteenth Amendments of the United States Constitution.

15. It is a denial of Due Process to convict an attorney for ethical violations upon the mere uncorroborated testimony of a disgruntled client.

16. It is a denial of Due Process to convict an attorney for ethical violations upon the mere uncorroborated testimony of a disgruntled client, particularly one who had a financial stake in the filing of the complaint in the first place; such uncorroborated testimony cannot rise to meet the "clear and convincing" standard.

17. It is a denial of Due Process under the Fifth and Fourteenth Amendments of the United States Constitution to convict an attorney for an ethical violation over what was clearly a bona fide fee dispute only.

18. The Court's suppressed evidence of common practice in Montgomery County, by its refusal to admit into evidence a completely nonunderstandable type of fee agreement used by one of the shining lights in that County, an attorney's office, in that county which is apparently revered by both the bench and the bar as, among other things, a big money maker; when the Respondent sought to refer to its contract with this very same complainant, Major, for comparison, the contract was rapidly ruled inadmissable, which it was not; whereby the Respondent was also denied Equal Protection of the laws.

19. Maryland Attorney Grievance Commission and this Court is engaging in selective prosecution which is a denial of Equal Protection of the Laws.

20. The Respondent was denied his right to a trial by jury in derogation of the Fifth, Seventh and Fourteenth Amendment of the United States Constitution.

21. The Court contradicted itself by disbelieving the "clearness" and "convincingness" of Major's allegations concerning being advised to snatch his child, but at the same time finding the same witness's uncorroborated testimony about the agreement he entered into with the attorney to be "clear" and "convincing."

22. The participation of the Maryland Attorney Grievance Commission in this matter is a denial of Fifth and Fourteenth Amendment Due Process rights under the federal Constitution because the Commission and its staff are entirely creatures, instrumentalities, and extension of the wishes and desires of this Court, are completely under the thumb of this Court and exist only to do this Court's bidding; which in this instance is to secure a finding of guilt against the Respondent; and the "master" is also a mere instrumentality and extension of this Court, not unbiased, nor objective entity, and the use of a "master" under these circumstances is a denial of Due Process under the Fifth and Fourteenth Amendments to the United States Constitution.

23. This Court's order and fiat dated February 5, 1975, instituting a new so-called "disciplinary code", replacing the august and venerable Canons of Professional Ethics of the Maryland Bar Association, and thereby legislating unconstitutional rules for the practice of law was a usurpation of the legislative prerogative to establish standards for the practice of law, and was illegal, unconstitutional and void, and to have convicted the Respondent under that February 5, 1975 order is therefore unconstitutional and illegal.

24. Bona fide fee disputes are always referred to the Fee Arbitration Committee head by Ben Lipitz, Esquire, in Baltimore City, when they involve a Baltimore Attorney,

and that was not done in this case; this constitutes a denial of Equal Protection of the Laws; it is believed that never has a mere fee dispute ever before been made the basis of proceedings like these.

25. The Maryland Attorney Grievance Commission has never lost a case which it has brought to this Court, which in itself indicates that the proceedings are biased, prejudiced, and not conducted with an even hand in violation of federal Due Process standards.

26. This Court has abdicated any "judging" function which it has by submitting the case to a master, which is unconstitutional as a denial of Due Process. This case is not the same as stating an account, judging real estate appraisals, and other such far removed instances as have been cited by Judge Marvin Smith in a previous opinion against this Respondent; a referal to a master is therefore unconstitutional when done non-consensually and this Respondent has certainly never consented to have this matter tried by a master. He wishes to have it tried by a jury, always has, and always will.

27. This Court has no right to make rules in the area of attorney discipline; it is a legislative prerogative which the legislature cannot delegate.

See the concurring opinion of Moylan, J. in *Porter v. State,* 47 Md. App. 96, 105, decided November 7, 1980.

28. This Court has set up a system of trying attorneys which applies to no other citizen in the state, or for that matter in the world, and the system lacks checks and balances, making it unconstitutional as a denial of Due Process, for the entire system is a monolithic melting together of this Court, the Attorney Grievance Commission, and the so-called "master", which well explains why the Attorney Grievance Commission has never lost a case here.

29. This Court by permitting the Maryland Attorney Grievance Commission to suppress complaints against whom it will, which it does customarily for "friends", has delegated *its* rule making power and given the Attorney

Grievance Commission *carte blanche* to make its own determination of "propriety" in an entirely unrestricted manner, leaving the practicing bar at the mercy of such as Myerberg, Pittman, Martin, and Murphy, and members of the bar who know these personalities though they may quake in their boots at expressing an opinion upon them, nevertheless know what I speak of.

30. "Clear and convincing" evidence requires according to *Terrazas v. Vance, supra,* that all ambiguities must be resolved in favor of the Respondent; and this was not done; whereby the Respondent has been denied Due Process of Law.

31. This Court has set up a system of prosecuting attorneys which gives the Maryland Attorney Grievance Commission free rein in giving forebearances to attorneys unrestrictively, to violate the Attorney disciplinary code, the Respondent being in possession of voluminous information to illustrate this fact; but which is within this Court's knowledge, it is believed, and which this Court condones; and thereby the Respondent is denied Equal Protection of the Laws; the Respondent demands an evidentiary hearing before this Court in bank and open to the public upon this matter.

32. The Chief Judge of this Court who has fully participated to an unknown extent in these proceedings should have disqualified himself from any participation, due to the fact that the Respondent was the author of an article which severely criticized him and which appeared in the Charleston West Virginia Gazette-Mail Newspaper, a newspaper of some 150,000 circulation, after publication was rejected by the local press; and because the Respondent had been severely critical of the said Chief Judge who by Article X of the Maryland Constitution has the job of being chief administrator of the Maryland court system; the Respondent severely criticized the Chief Judge for his handling of a matter regarding apparent inefficiency or malfeasance by Judge Cahoon in a certain case and the Chief Judge was criticized for refusing to answer the complaint

made by the Respondent concerning this matter; this matter never appeared in the press after that refusal although after that refusal the Respondent had attempted to have the matter made public knowledge.

33. The Respondent has no direct knowledge but he believes that the Chief Judge may have actively and knowingly participated in the selection of a hostile judge below to try this matter as "master" in concert with the same hostile Judge Cahoon referred to before who under the circumstances is of the Respondent's prior complaint against Judge Cahoon which without question aroused hostility and passion against the Respondent on the part of Judge Cahoon, and this method of selecting a master was denial of Due Process to the Respondent under the Fifth and Fourteenth Amendments to the United States Constitution.

34. This particular pleading, namely, Mathias' "Findings" having been dropped upon the Respondent at the height of the holiday season, he reserves the right to supplement these Exceptions if, upon later thought, he desires to further engage in what is clearly a hopeless struggle with a more powerful entity who has neither eyes, ears, nor consideration which it apparently ever intends to offer to the true facts of this matter and to the true facts of its creature, the Maryland Attorney Grievance Commission.

WHEREFORE, the Respondent demands that these proceedings against him be dismissed.

LEONARD J. KERPELMAN
In Proper Person
2403 W. Rogers Avenue
Baltimore, Maryland 21209 367-8855

## ADDITIONAL EXCEPTIONS, MOTIONS, DEMAND FOR HEARING

35. It was error as a denial of Due Process to refuse to disqualify all Montgomery County judges.

36. It was a denial of Due Process to refuse to transfer the case out of Montgomery County.

37. It was a denial of Due Process for Mathias to refuse to disqualify himself.

38. This court's intention, custom, or the fact, that each and every individual member will not read the entire transcript is a denial of Due Process. An evidentiary hearing is demanded.

39. This court's illegal delegation to a single member, or less than the whole, of its solemn constitutional duty to judge and decide, as before, is a denial of Due Process. Motion is hereby made to dismiss the case on this basis. An evidentiary hearing is demanded.

40. A jury, on the same facts, with a preponderance of the evidence standard, judged the facts not conclusive against the Respondent; then as a matter of law, there can have been no sufficiency of evidence under a "clear and convincing" standard, against the Respondent. An evidentiary hearing is demanded.

41. Motion is made to disqualify Murphy, and any other of this court having prejudice or hostility against the Respondent, from any participation in this matter. An evidentiary hearing is demanded.

LEONARD J. KERPELMAN
In Proper Person

I HEREBY CERTIFY that on this    day of December, 1980, a copy of the aforegoing Additional Exceptions, etc., was mailed to Henry J. Meyerberg, Assistant Bar Counsel, District Court Bldg., Rowe Blvd. & Taylor Ave., Annapolis, Maryland 21401.

LEONARD J. KERPELMAN