Attorney Grievance Comm'n v. Jeffrey S. Marcalus, Misc. Docket AG No. 64, September Term, 2013

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred lawyer who, among other things, engaged in sending sexually explicit text messages and informed woman that "sugar daddy" would pay her to watch her masturbate, and who previously had been disciplined on two occasions for engaging in misconduct. Such conduct violated Maryland Lawyers' Rule of Professional Conduct ("MLRPC") 8.4(d) (Conduct that is Prejudicial to the Administration of Justice).

Circuit Court for Anne Arundel County
Case No. C-13-183593

Argued: February 5, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 64

September Term, 2013

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

JEFFREY S. MARCALUS

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J.

_____

Filed: March 27, 2015

This attorney discipline proceeding involves a lawyer who, among other misconduct, engaged in "sexting"[1] with a female party in litigation in which he represented the opposing party, and informed the female party that a "sugar daddy"[2] would pay her to watch her masturbate.

Jeffrey S. Marcalus ("Marcalus"), Respondent, a member of the Bar of Maryland, texted Lindsay Dudley ("Dudley")—a self-represented party in litigation in which Marcalus represented the opposing party—to, among other things, request a photograph of Dudley in a bathing suit; discuss whether Dudley would be willing to use "toys" with a "sugar daddy"; and state that he "usually wake[s] up with" an erection. After Dudley engaged counsel, her attorney filed a complaint against Marcalus with the Attorney Grievance Commission ("the Commission"), Petitioner.

On November 15, 2013, on the Commission's behalf, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Marcalus, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.7 (Conflict of Interest: General Rule), 4.2 (Communication with Person Represented by Counsel), 4.3 (Dealing with Unrepresented Person), 8.4(b) (Criminal Act), and 8.4(d) (Conduct that is Prejudicial to the Administration of Justice).

On November 20, 2013, this Court designated the Honorable Paul F. Harris, Jr. ("the

---

[1]"Sexting" is "the sending of sexually explicit messages . . . by cell phone." Sexting, Merriam-Webster, http://www.merriam-webster.com/dictionary/sexting.

[2]A "sugar daddy" is "a rich, older man who gives money, gifts, etc., to someone (such as a young woman) in exchange for sex, friendship, etc." Sugar Daddy, Merriam-Webster, http://www.merriam-webster.com/dictionary/sugar%20daddy.

hearing judge") of the Circuit Court for Anne Arundel County to hear this attorney discipline proceeding. On April 24 and 25, 2014, the hearing judge conducted an evidentiary hearing. On July 22, 2014, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Marcalus had violated MLRPC 8.4(d), but had not violated MLRPC 1.7(a)(2), 4.2(a), 4.3, or 8.4(b).

On February 5, 2015, we heard oral argument, and, immediately afterward, disbarred Marcalus. See Attorney Grievance Comm'n v. Marcalus, ___ Md. ___, ___ A.3d ___, Misc. Docket AG No. 64, Sept. Term, 2013, 2015 WL 474517, at *1 (Md. Feb. 5, 2015) (per curiam). We now explain the reasons for Marcalus's disbarment.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

In December 1993, this Court admitted Marcalus to the Bar of Maryland.

In 2012, Kendall Minchin ("Minchin") retained Marcalus to represent him in a custody modification action in which the other party was Dudley, the mother of Minchin's child. Initially, Dudley represented herself; thus, Dudley and Marcalus exchanged telephone numbers and e-mail addresses.

Marcalus scheduled a deposition of Dudley for November 14, 2012. On November 13, 2012, Marcalus texted Dudley to confirm that her deposition would occur the next day. Dudley texted Marcalus to respond in the affirmative. Afterward, Marcalus texted Dudley to ask whether she knew anyone who did modeling or promotional work. Soon thereafter, Marcalus texted Dudley to apologize and state that his text about modeling or promotional work was meant for a client, not Dudley.

On November 14, 2012, Marcalus deposed Dudley. Afterward, Marcalus asked whether Dudley would consider moving to the school district in which Minchin lived. Dudley responded that she could not afford to live in the school district in which Minchin lived, and joked that she would need a "sugar daddy" to do so. Later that day, Marcalus texted Dudley to state that he would "let [her] know if [he] c[ould] think of a s d [sic] for" her.

On November 28, 2012,[3] Dudley texted Marcalus to ask: "[W]hat type of promotional work was your client lo[o]king for[?]" Marcalus and Dudley texted each other to arrange for Dudley to come to Marcalus's office to discuss the modeling or promotional work. On that day, Dudley came to Marcalus's office, where Marcalus told Dudley that she would need to bring bathing suits, high heels, and a lingerie-like short dress to the modeling or promotional work. Dudley left Marcalus's office, and Marcalus texted Dudley to ask: "[I]s it possible to e[-]mail a pic or two[?]" Dudley texted Marcalus to ask: "Yes[. W]hat kind of photos? Anything[?]" Marcalus texted Dudley to respond: "[W]ell maybe one in a suit you mentioned[. A]nd we forgot to talk about the other thing." Marcalus and Dudley texted each other to arrange a meeting the next day to discuss a "sugar daddy" for Dudley. Marcalus texted Dudley to offer to give her cash "to buy some things[.]"

On November 29, 2012, Marcalus texted Dudley to arrange a meeting that day, to remind Dudley to bring the "outfit" so that Marcalus could see it, and to revisit the possibility that Dudley e-mail photographs of herself to Marcalus. On that day, Marcalus

---

[3]The hearing judge inadvertently referred to November 28, 2014.

and Dudley met at a restaurant, got into Marcalus's car, and went to a beach, where Dudley showed Marcalus outfits that she had brought.

On November 30, 2012, Marcalus and Dudley texted each other to discuss what Dudley would be willing to do with the "sugar daddy" and whether Dudley would be willing to use "toys" with the "sugar daddy." Marcalus and Dudley seemingly joked about Marcalus's waking up with an erection.[4] On that day, during a telephone conversation, Marcalus told Dudley that the "sugar daddy" would pay her to watch her masturbate.

Marcalus showed remorse for his conduct. At the evidentiary hearing, both Marcalus and Dudley testified that their statements to each other were a "joke." Marcalus engaged in a deceptive practice during this attorney discipline proceeding, as, in his letter to the Commission responding to the complaint against him, Marcalus failed to state that his statements to Dudley were a "joke."

**STANDARD OF REVIEW**

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 16-759(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. McDowell, 439 Md. 26, 35, 93 A.3d 711, 716 (2014) ("[T]his Court reviews for clear error a hearing judge's findings of fact[.]") (Citations omitted)); Md. R.

---

[4]The record contains Marcalus's and Dudley's texts. Marcalus texted Dudley to state: "[I] usually wake up with you know what[.]" In response, Dudley texted Marcalus to state: "Haha that's a male thing[.]"

16-759(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated the MLRPC. See Md. R. 16-757(b) ("The [Commission] has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

**DISCUSSION**

**(A) Findings of Fact**

The Commission did not except to any of the hearing judge's findings of fact. Marcalus excepted to: (1) the hearing judge's finding that Marcalus "raised the prospect of Dudley masturbating for [the] 'sugar daddy' in exchange for" money; (2) the hearing judge's finding that Marcalus engaged in a deceptive practice during this attorney discipline proceeding; and (3) the hearing judge's refraining from finding that Marcalus lacked a selfish motive.[5]

We need not, and do not, rule on Marcalus's first exception, which is based on Marcalus's allegation that Dudley volunteered that she would be willing to masturbate in front of the "sugar daddy" in exchange for money; *i.e.*, that Dudley raised the matter first. Even if Marcalus's allegation is true, the hearing judge found (and Marcalus does not

---

[5]In addition to filing exceptions, Marcalus filed a "Motion to Dismiss [the Commission]'s Exception and Recommendation" on the ground that the Commission allegedly filed its exception and recommendation late. The Commission attached to its response to the motion to dismiss a notice from this Court's Clerk, which stated that any exceptions were to be filed by August 7, 2014. On that date, the Commission filed its exceptions and recommendation. We accept the Commission's filing. Thus, we deny the motion to dismiss.

- 5 -

dispute) that Marcalus told Dudley that the "sugar daddy" would pay Dudley to watch her masturbate. This is the culmination of Marcalus's misconduct as to the "sugar daddy."

We overrule Marcalus's second exception, which is based on Marcalus's allegation that the text messages that were admitted as evidence at the hearing made it "evident" that his statements to Dudley were a "joke." Even if Marcalus's allegation is true, the hearing judge found (and Marcalus expressly concedes) that, in his letter to the Commission responding to the complaint against him, Marcalus failed to assert that his statements to Dudley were a "joke." In his letter to the Commission, Marcalus indicated that he "did have a single friend [who] may [have] be[en] interested in meeting" Dudley, and that "whatever the two of them did was between the two of them." In other words, in his letter, Marcalus represented that he was acting as a liaison between Dudley and a friend who could become Dudley's "sugar daddy." Ostensibly, Marcalus represented the same to the Commission to implicitly deny that he himself had ever contemplated becoming Dudley's "sugar daddy." In any event, for whatever reason, in his letter to the Commission, Marcalus conveyed that there was an actual potential "sugar daddy." Marcalus's representation in his letter to the Commission is inconsistent with Marcalus's testimony at the hearing that his statements to Dudley were a "joke"—*i.e.*, there had never been an actual potential "sugar daddy," Marcalus himself or otherwise. Thus, the hearing judge did not clearly err in finding that Marcalus had been deceptive by not alleging in his letter to the Commission responding to the complaint against him that his statements to Dudley were a "joke."

We overrule Marcalus's third exception, which is based on Marcalus pointing out that: (1) the Commission did not offer any evidence that Marcalus had a selfish motive;

and (2) both Marcalus and Dudley testified that their statements to each other were a "joke." "A respondent who asserts . . . a matter of mitigation . . . has the burden of proving the . . . matter by a preponderance of the evidence." Md. R. 16-757(b). In other words, a lack of evidence of a selfish motive does not compel a fact-finder to declare a lack of a selfish motive. That Marcalus and Dudley testified that their statements to each other were a "joke" does not shed any light on Marcalus's motive for making his statements, much less whether his motive was selfish. Thus, the hearing judge did not clearly err in refraining from finding that Marcalus lacked a selfish motive.

### (B) Conclusions of Law

Marcalus excepted to the hearing judge's conclusion that he violated MLRPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice). For the below reasons, we overrule Marcalus's exception.

The Commission excepted to the hearing judge's conclusion that Marcalus did not violate MLRPC 1.7(a)(2) (Conflict of Interest: General Rule); however, the Commission recommended that we disbar Marcalus even if we concluded that Marcalus violated only MLRPC 8.4(d). As discussed below, we agreed with the Commission that disbarment was the appropriate sanction for Marcalus's misconduct based only on Marcalus's violation of MLRPC 8.4(d); thus, we need not, and do not, determine whether Marcalus violated any other MLRPC.

### MLRPC 8.4(d) (Conduct that is Prejudicial to the Administration of Justice)

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer

violates MLRPC 8.4(d) where the lawyer's conduct negatively impacts the public's perception of the legal profession." McDowell, 439 Md. at 39, 93 A.3d at 719 (citation, ellipses, and internal quotation marks omitted).

In determining whether a lawyer violated MLRPC 8.4(d) by engaging in conduct that negatively impacted the public's perception of the legal profession, "this Court applie[s] the 'objective' standard of whether" the lawyer's conduct would negatively impact the perception of the legal profession of "a reasonable member of the public . . . , not the subjective standard of whether the lawyer's conduct actually impacted the public and/or a particular person (e.g., a complainant) who is involved with the attorney discipline proceeding." Attorney Grievance Comm'n v. Carl Stephen Basinger, ___ Md. ___, ___ A.3d ___, Misc. Docket AG No. 30, Sept. Term, 2013, 2015 WL 737409, at *6 (quoting Attorney Grievance Comm'n v. Saridakis, 402 Md. 413, 430 n.10, 430, 936 A.2d 886, 896 n.10, 896 (2007)) (some brackets and internal quotation marks omitted).[6]

Here, clear and convincing evidence supports the hearing judge's conclusion that

---

[6]Of course, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct actually negatively impacts the public's perception of the legal profession. See, e.g., Attorney Grievance Comm'n v. Greenleaf, 438 Md. 151, 162 n.12, 91 A.3d 1066, 1073 n.12 (2014) ("[T]he public has [] learned that, while the Chief Deputy Clerk of the Court of Special Appeals, Greenleaf engaged in egregious misconduct[.]"); McDowell, 439 Md. at 40, 93 A.3d at 720 ("Once it became public knowledge, the robo-signing . . . prompted adverse media coverage[.]" (Citing Attorney Grievance Comm'n v. Geesing, 436 Md. 56, 65, 80 A.3d 718, 723 (2013)). Plainly put, an actual negative impact on the public's perception of the legal profession is sufficient, but not necessary, to a conclusion that a lawyer violated MLRPC 8.4(d) by negatively impacting the public's perception of the legal profession. Thus, we are unpersuaded by Marcalus's reliance on the circumstance that there is no evidence that his conduct actually negatively impacted the public's perception of the legal profession.

Marcalus violated MLRPC 8.4(d). At all relevant times, Dudley was a self-represented party in litigation in which Marcalus represented the opposing party. Whether mistakenly or not, Marcalus texted Dudley to ask whether she knew anyone who did modeling or promotional work. Later, Marcalus texted Dudley to state that he would "let [her] know if [he] c[ould] think of a s[ugar] d[addy] for" her. After Dudley expressed interest in the modeling or promotional work, Marcalus met with Dudley and told her that she would need to bring bathing suits, high heels, and a lingerie-like short dress to the modeling or promotional work. Later, Marcalus texted Dudley to request a photograph of Dudley in a bathing suit. Marcalus and Dudley texted each other to arrange a meeting to discuss a "sugar daddy" for Dudley, and Marcalus texted Dudley to offer to give Dudley cash "to buy some things[.]" Still later, Marcalus and Dudley went to a beach, where Dudley showed Marcalus outfits that she had brought. Afterward, Marcalus and Dudley texted each other to discuss what Dudley would be willing to do with the "sugar daddy" and whether Dudley would be willing to use "toys" with the "sugar daddy." Marcalus texted Dudley to state that he "usually wake[s] up with" an erection. And, during a telephone conversation, Marcalus told Dudley that the "sugar daddy" would pay her to watch her masturbate.

We are beyond satisfied that, even if Marcalus and Dudley engaged in consensual conduct and believed that their statements to each other were a "joke," given that Dudley was a self-represented party in litigation in which Marcalus represented the opposing party, Marcalus's "sexting" and suggestive conduct would negatively impact the perception of the legal profession of "a reasonable member of the public[.]" Basinger, 2015 WL 737409,

- 9 -

at *6 (quoting Saridakis, 402 Md. at 430, 936 A.2d at 896) (some brackets and internal quotation marks omitted). No reasonable member of the public would expect a lawyer to engage in "sexting" and suggestive conduct with a self-represented party in litigation in which the lawyer represented the opposing party.

We are unpersuaded by Marcalus's reliance on Attorney Grievance Comm'n v. Link, 380 Md. 405, 429, 844 A.2d 1197, 1211-12 (2004), in which this Court stated that a lawyer violates MLRPC 8.4(d) through purely private conduct—*i.e.*, conduct that is entirely unrelated to the practice of law—if and only if the lawyer's conduct "is criminal or so egregious as to make the harm, or potential harm, flowing from it patent[.]" See also Basinger, 2015 WL 737409, at *7 ("[I]n *Link*, by 'private,' this Court meant 'unrelated to the practice of law.'"). Dudley was a self-represented party in litigation in which Marcalus represented the opposing party. Thus, Marcalus's conduct was not entirely unrelated to the practice of law.

### (C) Sanction

The Commission recommended that we disbar Marcalus, who recommended that we dismiss this attorney discipline proceeding, or, alternatively, that we reprimand or suspend him.

In McDowell, 439 Md. at 45-46, 93 A.3d at 722-23, this Court stated:

> This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court protects the public by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.
>
> In determining an appropriate sanction for a lawyer's misconduct, this

- 10 -

Court considers: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.

Aggravating factors include: (a) prior attorney discipline; (b) a dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple violations of the MLRPC; (e) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court; (f) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (g) refusal to acknowledge the wrongful nature of the misconduct; (h) vulnerability of the victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; and (k) illegal conduct, including that involving the use of controlled substances.

Mitigating factors include: (a) the absence of prior attorney discipline; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith efforts to make restitution or to rectify consequences of the misconduct; (e) full and free disclosure to the Commission or a cooperative attitude toward the attorney discipline proceeding; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) a mental disability or chemical dependency including alcoholism or drug abuse where: (1) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of the misconduct is unlikely; (j) delay in the attorney discipline proceeding; (k) the imposition of other penalties or sanctions; (l) remorse; and (m) remoteness of prior violations of the MLRPC.

(Brackets, citations, footnote, and internal quotation marks omitted).

In addition to the above, likelihood of repetition of misconduct is an aggravating factor, and unlikelihood of repetition of misconduct is a mitigating factor. See Attorney Grievance Comm'n v. Worthy, 436 Md. 633, 650, 84 A.3d 113, 123 (2014) ("[C]onsiderations when determining sanctions [] include . . . the likelihood of the conduct being repeated[.]" (Citation and internal quotation marks omitted); compare Attorney

Grievance Comm'n v. Green, 441 Md. 80, 102, 105 A.3d 500, 513-14 (2014) ("Because there is nothing in the record plumbing the reasons for Green's misconduct or the likelihood that recidivism is not a concern, due to his multiple refusals to cooperate with Bar Counsel, an open-ended indefinite suspension is appropriate."), with Attorney Grievance Comm'n v. Smith, 405 Md. 107, 130, 950 A.2d 101, 114 (2008) (This Court suspended from the practice of law in Maryland for six months a lawyer whose "actions w[ould] likely not be repeated[.]").

Here, as to the duty violated and Marcalus's mental state, Marcalus violated MLRPC 8.4(d) by intentionally engaging in "sexting." As to the potential or actual injury that Marcalus's misconduct caused, Marcalus's misconduct would negatively impact the perception of the legal profession of a reasonable member of the public, and was so egregious as to make the potential harm flowing from it patent.

We note only one mitigating factor: remorse. We disagree with the hearing judge's determination that Marcalus's misconduct is mitigated by the circumstance that he refrained from "follow[ing] through with" what he discussed with Dudley, as well as Marcalus's contention that his misconduct is mitigated by the circumstance that he did not engage in misconduct that involved a lack of competence or diligence. "A lawyer's misconduct is not mitigated by the lawyer's refraining from engaging in even more egregious and inappropriate misconduct[,]" or by refraining from violating even more MLRPC. Attorney Grievance Comm'n v. Greenleaf, 438 Md. 151, 167, 91 A.3d 1066, 1075 (2014); see also id. at 167, 153, 91 A.3d at 1075, 1067 ("We reject Greenleaf's contention that his misconduct is mitigated by such circumstances as the lack of: (1) in-

- 12 -

person contact between himself and" a person whom Greenleaf solicited online for sexual acts and whom Greenleaf believed to be under the age of consent; and (2) "misconduct that arose out of representation of a client.").

We note five aggravating factors. First, Marcalus has substantial experience in the practice of law, as he has been a member of the Bar of Maryland for more than twenty years. Second, Marcalus engaged in a deceptive practice during this attorney discipline proceeding, as, in his letter to the Commission responding to the complaint against him, he claimed to be acting as a liaison between Dudley and an actual potential "sugar daddy" and did not claim that his statements to Dudley were a "joke," as he later testified at the hearing.

Even more importantly, third, fourth, and fifth, Marcalus has received prior attorney discipline; has demonstrated a pattern of misconduct; and has demonstrated that he is likely to repeat his misconduct. In <u>Attorney Grievance Comm'n v. Marcalus</u>, 401 Md. 496, 933 A.2d 382 (2007), this Court granted a joint petition and indefinitely suspended Marcalus from the practice of law in Maryland with the right to apply for reinstatement no sooner than thirty days afterward where, significantly, Marcalus engaged in the exact same type of misconduct that is at issue here: violating MLRPC 8.4(d) by engaging in "sexting."[7] Marcalus failed to cease violating MLRPC 8.4(d) by engaging in misconduct; less than three years later, in <u>Attorney Grievance Comm'n v. Marcalus</u>, 414 Md. 501, 526, 523, 521, 508, 996 A.2d 350, 364, 362, 361, 354 (2010), this Court suspended Marcalus from the

---

[7]In <u>Marcalus</u>, 401 Md. 496, 933 A.2d 382, Marcalus engaged in "sexting" with a client; here, Marcalus engaged in "sexting" with Dudley, a party in litigation in which he represented the opposing party. That said, we discern no meaningful difference between Marcalus's previous "sexting" and his instant "sexting."

- 13 -

practice of law in Maryland for sixty days for violating MLRPC 8.4(d) and 8.4(b) (Criminal Act) by giving a woman a painkiller in exchange for fellatio.

We agreed with the Commission that disbarment is the appropriate sanction for Marcalus's misconduct. This is the third time that Marcalus has violated MLRPC 8.4(d) by engaging in misconduct in general, and this is the second time that Marcalus has violated MLRPC 8.4(d) by "sexting" in particular. Either Marcalus fails to grasp that his misconduct is inconsistent with his professional obligations, or he does so grasp and chooses to disregard his professional obligations. In any event, Marcalus has demonstrated that he is extremely likely to repeat his misconduct, no matter how many times this Court suspends him from the practice of law in Maryland. To protect the public's confidence in the legal profession, our only remaining option is to disbar Marcalus so that, the next time he engages in misconduct, the same will not again negatively affect the public's perception of the legal profession. Cf. Attorney Grievance Comm'n v. Kerpelman, 292 Md. 228, 244-45, 438 A.2d 501, 509-510 (1981) ("[T]his is the second time [that Kerpelman] has been found guilty of professional misconduct. If we could conclude that this was a pattern of conduct[,] we would not hesitate to disbar. . . . Having agreed on suspension rather than disbarment as the proper sanction, we add that any similar misconduct proved against this attorney will reflect most adversely upon his fitness to practice law in this State." (Citation omitted)).

The only mitigating factor (remorse) falls woefully short of warranting a lesser sanction. Marcalus's remorse is too little, too late. Marcalus should have realized that his misconduct was wrongful before, not after, he engaged in it for the third time. Plainly put,

- 14 -

in this instance, "three strikes and you're out."