936 A.2d 886

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

**v.**

**Anthony A. SARIDAKIS.**

**Misc. AG No. 25, Sept. Term, 2006.**

Court of Appeals of Maryland.

Dec. 7, 2007.

Wilner, J., dissented and filed opinion, in which Greene, J., joined.

416

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Albert D. Brault (Brault Graham, LLC), Rockville, for respondent.

Argued before BELL, C.J., RAKER,* CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER (Retired, specially assigned), JJ.

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

HARRELL, J.

The Attorney Grievance Commission ("Petitioner"), acting through Bar Counsel, filed with this Court on 27 July 2006 a Petition for Disciplinary or Remedial Action (the "Petition") against Anthony Alex Saridakis ("Respondent") alleging violations of the Maryland Rules of Professional Conduct ("MRPC") in connection with his preparation of a will on behalf of an unrelated, long-time client, Wylette Speed, in which he was named the beneficiary of a substantial bequest (in excess of $400,000.00). Respondent was charged accordingly with violations of MRPC 1.8(c) (Conflicts of Interest: Current Clients) [1] and 8.4(d) (Misconduct).[2]

## I. Procedural History

Respondent answered the Petition, admitting most of the factual allegations therein, but denying those averments concluding that his actions constituted violations of the MRPC.

---

**1.** The May 1994 version of Rule 1.8(c), which was in effect at the time of its alleged violation by Respondent, in relevant part, stated:

(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as a parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where:

(1) the client is related to the donee; or

(2) the client is represented by independent counsel in connection with the gift.

The current version of Rule 1.8(c), which became effective 1 July 2005, provides:

(c) A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

**2.** The May 1994 version of Rule 8.4(d), in pertinent part, read:

It is professional misconduct for a lawyer to:

\*       \*       \*

(d) engage in conduct that is prejudicial to the administration of justice.

Pursuant to Maryland Rule 16–752(a),[3] we referred the matter to the Honorable Joseph A. Dugan, Jr., of the Circuit Court for Montgomery County, to conduct an evidentiary hearing and render findings of fact and recommended conclusions of law according to Maryland Rule 16–757(c).[4] Following an evidentiary hearing, Judge Dugan filed on 1 February 2007 his written findings of fact and conclusions o f law, which stated his determination that Respondent did not commit the ethical violations alleged. Petitioner filed timely with this Court its Exceptions to the Findings of Fact and Conclusions of Law. Were Petitioner's Exceptions well-taken, it recommended a sanction of indefinite suspension. Respondent filed a Response to those exceptions and urged dismissal of the Petition.

## II. The Hearing Judge's Findings of Fact and Conclusions of Law

Respondent was admitted by the Court of Appeals and to the District of Columbia Bar in 1974. Respondent, since then, remains a member in good standing in both jurisdictions. After being employed for several years with the United States Department of State, and later engaged in private practice, Respondent became associated in 1983 with the law firm of DeOrsey & Thompson ("the Firm"). Since 1991, he has been

---

**3.** Maryland Rule 16–752(a) provides:

Upon the filing of a Petitioner for Disciplinary or Remedial Action, the Court of Appears may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall required the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

**4.** Maryland Rule 16–757(c) provides:

(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

the only lawyer practicing under the Firm name.[5] His practice focuses mainly on estate planning, probate and trust administration, and taxation.

When Respondent joined DeOrsey & Thompson in 1983, the Firm had a pre-existing business client named Speed & Briscoe, which operated truck stops along the Interstate 95 corridor. Mr. Speed and Mr. Briscoe, the partners of the business, were close friends. Mr. Lee Speed and his wife, Wylette, the testatrix, did not have any children. Mr. and Mrs. Briscoe had one child, Lee Speed Briscoe. Lee and Wylette were the godparents of the Briscoes' child. Mr. Speed passed away in 1975, leaving a trust estate in favor of his wife. American Security and Trust Company was designated as the trustee. Because Wylette's husband had relied on DeOrsey & Thompson for his legal services, Wylette entrusted Respondent, as an associate of the Firm, to represent her legal interests.

Wylette had no immediate family in close proximity to her residential condominium unit in Bethesda, Maryland. Her only relatives consisted of a sister in ill health residing in Baltimore and a niece who lived in Ohio. Her primary social contacts thus were with her trust officers, Marny McCain and her husband, Robert McCain; her godson, Lee Speed Briscoe; and Respondent. Respondent visited with Wylette on a regular basis throughout his legal representation of her. Although Mrs. Speed was a quiet person, and generally kept to herself, she demonstrated a strong will and keen ability to participate in the decision-making process concerning recommendations made to her by the trust officers and Respondent.

In the late 1980s, Respondent drafted several wills for Wylette, at her request. She also executed a general power of attorney in favor of Respondent and named him as her health care agent. As a result, Respondent exercised control over all of her financial and real estate matters. The hearing judge in

---

5. DeOrsey & Thompson was composed originally of Mr. DeOrsey, Robert K. Thompson; his brother, William D. Thompson; and Respondent. By 1991, DeOrsey and the Thompson brothers had passed away, leaving Respondent at the helm of the Firm.

the present case determined that Wylette was satisfied with Respondent's work and reposed a great deal of trust in him as her attorney.

In 1992, Wylette suffered a debilitating stroke. Respondent came to visit Wylette at least once during her stay at Suburban Hospital to bring her clothes, and on one other occasion to facilitate her transfer to a nursing home. Respondent visited Wylette frequently at the first nursing home and undertook to research a more suitable place for her after she complained of her accommodations. As a result of Respondent's efforts, Mrs. Speed was transferred to a facility that paid closer attention to her wants and needs. While in these quarters, Respondent visited Wylette several times a month and continued to manage her trust, estate, and tax matters, in addition to serving as the "family member" at all meetings with the nursing home staff, where her medical care and therapy were discussed and evaluated.

After several months in the new nursing home, Wylette repeated her request, made once previously while in the first nursing home, that Respondent draft for her a new will that, for the first time, would include Respondent as a beneficiary of her residuary estate. Respondent reviewed the bequests with her and advised her that he did not feel comfortable composing a will in which he was a beneficiary. Wylette, however, was adamant about her wishes, so Respondent told her that she should consult with another attorney because of his concerns about preparing such a will. Mrs. Speed responded that she did not know any other attorneys because of her long-standing reliance on the Firm and Respondent. She asked Respondent to locate another attorney in order to carry out her desired disposition. In the meantime, Wylette informed her godson, Lee Speed Briscoe, of her proposed bequest to Respondent. Her godson reacted to this news as a natural and reasonable decision, given his awareness of the close relationship she had with her attorney.

Respondent prepared the will according to Wylette's instructions and consulted with an experienced estates and

trusts attorney, Richard Lawlor, who shared office space with Respondent, for the purpose of reviewing the will with Wylette and gauging her competence. Lawlor and Respondent came to know one another initially while representing independent clients in an estate matter in 1988. Several years later, DeOrsey & Thompson relocated its offices into an office suite in Silver Spring, Maryland, shared by the firm for which Lawlor was working. From 1990 until 1995, the firms maintained separate leases for the office suite, but shared a receptionist and a conference room. The firms did not, however, share clients and maintained distinct law practices.

Lawlor agreed to meet with Wylette Speed. On the appointed day of 13 May 1994, Lawlor and Respondent traveled separately to Wylette's nursing home. Respondent introduced Lawlor to Wylette and explained the terms of the will he drafted at her request. He then explained to Wylette that Lawlor was going to serve as her attorney for the day in order to discuss and, if necessary, modify the will. Respondent then left the room for Wylette and Lawlor to consult privately. Lawlor, according to the available evidence, conversed generally with Mrs. Speed, which allowed him to form the opinion that she was of sound mind and competent to execute a will. Next, Lawlor reviewed all of the items contained in the will drafted by Respondent and verified Wylette' s donative intent as to each item, including the bequest to Respondent. Because Mrs. Speed was unable to sign her own name—a disability stemming from her stroke—she executed the will by marking an "X" on the signature line. This mark was accompanied by a *jurat*[6] prepared by Lawlor, intended to verify that he witnessed Wylette Speed execute the will.

---

6. A jurat generally is "[a] certification added to an affidavit or deposition stating when and before what authority the affidavit or deposition was made." BLACK's LAW DICTIONARY 866 (8th ed.1999). Respondent referred to the *jurat* as a "notary jurat," but acknowledged that Lawlor, the drafter of the *jurat,* was not a notary. In context, the *jurat* to which Respondent alluded appears to be what is known as a "witness jurat." Black's, *supra* at 866 ("A subscribing witness's certificate acknowledging the act of witnessing.").

The hearing judge concluded that Lawlor "acted as independent counsel to Wylette." As principal support for this conclusion, Judge Dugan relied on a three-page, typed memorandum, prepared by Lawlor immediately following the meeting, relating to his consultation with Wylette at the nursing home on 13 May 1994. This memorandum was the source of Lawlor's recount of what transpired between he and Mrs. Speed. Lawlor also opened a client file for Wylette, noted the nature of his representation as "estate planning consultation," and prepared a bill for his services. Lawlor addressed the bill to Wylette, which ultimately was forwarded to Respondent so that it could be paid from Mrs. Speed's trust assets. Wylette was apprised of this arrangement and consented.

Wylette Speed died on 6 April 2000. Respondent, in his capacity as personal representative for Mrs. Speed, made the appropriate filings to administer her estate. Among the documents submitted for probate was a "First and Final Account," which listed all bequests, including the residuary bequest in favor of Respondent in the amount of $413,281.00, out of a gross estate of $3,548,410.00. The account was approved by the Circuit Court for Montgomery County, sitting as the Orphan's Court.

The hearing judge in the present case accepted as an expert witness in the field of legal ethics, Professor Abraham Dash of the faculty of the University of Maryland School of Law. The judge's findings stated that "Professor Dash's opinion, which was accepted in full by this Court, is that Respondent did not violate Rule 1.8(c) of the Maryland Rules of Professional Conduct in 1994." [7] The witness concluded that

7. Professor Dash testified that "[m]y opinion is that in 1994 when that will was drafted under the facts in this case, Mr. Saridakis had not violated 1.8(c)." Bar Counsel did not object to the expert witness offering this legal conclusion. In any event, this Court, by virtue of its exclusive jurisdiction in attorney discipline cases, is the final arbiter of what conduct constitutes a violation of the MRPC. *Attorney Grievance Comm'n v. Steinberg,* 395 Md. 337, 361, 910 A.2d 429, 443 (2006) ("[T]his Court has the ultimate authority to decide whether a lawyer has violated the MRPC").

Lawlor was a truly independent attorney for Wylette, thus satisfying the purpose inherent in MRPC 1.8(c) of affirming the donor's donative intent. The hearing judge also was persuaded by the character witnesses who vouched for the professional integrity of both Respondent and Lawlor. Judge Dugan also found persuasive that the Complainant in this disciplinary matter, Wylette Speed's niece in Ohio, was aware of both the relationship between her aunt and Respondent and the residuary bequest, but failed to challenge the gift as the result of undue influence while the will was in probate. This delay, in Judge Dugan's opinion, prejudiced Respondent because Lawlor's independent recollection of events had diminished over time.

Accordingly, the hearing judge concluded that Respondent did not exert undue influence over Wylette Speed with regard to her making a residuary bequest to him in her will. Further, Respondent did not violate MRPC 1.8(c) because Lawlor served as Wylette's independent counsel in his consultations with her regarding the gift to Respondent. As a natural incident to that conclusion, there was no violation of MRPC 8.4(d). Respondent's Motion to Dismiss, based on the equity principle of laches, however, was denied because Bar Counsel was not responsible for the delay (attributable to the Complainant in making Bar Counsel aware of the matter) in prosecuting the charges against Respondent.

### III. Standard of Review

■ This Court conducts an independent review of the record and generally accepts a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance Comm'n v. Lee*, 390 Md. 517, 524, 890 A.2d 273, 277 (2006); *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006); *Attorney Grievance Comm'n v. Stolarz*, 379 Md. 387, 397, 842 A.2d 42, 47 (2004); *Attorney Grievance Comm'n v. Culver*, 371 Md. 265, 274, 808 A.2d 1251, 1256 (2002); *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267 (2001) ("The 'hearing court's findings of fact are *prima facie* correct and will not be

disturbed unless they are shown to be clearly erroneous.'") (internal citations omitted); *see also* Md. Rule 16–759(b)(2)(B) ("This Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.").

█ As to the hearing judge's conclusions of law, this Court has the ultimate authority to decide whether a lawyer has violated the MRPC and, thus, reviews the hearing judge's conclusions of law on a *de novo* basis. *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007); *Harrington,* 367 Md. at 49, 785 A.2d at 1267–68 (citing *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997); *Attorney Grievance Comm'n v. Shaw,* 354 Md. 636, 646, 732 A.2d 876, 881 (1999); *Attorney Grievance Comm'n v. Breschi,* 340 Md. 590, 599, 667 A.2d 659, 663 (1995)); *see also* Md. Rule 16–759(b)(1).

█ Bar Counsel, as petitioner in this case, bears the burden of proving a violation of the MRPC by clear and convincing evidence, while the respondent attorney only bears the burden of proving an affirmative defense and/or matters of mitigation by a preponderance of the evidence. *Guida,* 391 Md. at 50, 891 A.2d at 1095 (applying Md. Rule 16–757(b)). "Clear and convincing evidence must be more than a mere preponderance but not beyond a reasonable doubt." *Attorney Grievance Comm'n v. DiCicco,* 369 Md. 662, 681, 802 A.2d 1014, 1025 (2002).

## IV.  Exceptions Filed by Petitioner

Petitioner in this case challenges Judge Dugan's conclusion that MRPC 1.8(c) was not violated and, incidentally, protests the hearing judge's refusal to find a violation of MRPC 8.4(d). With the exception of Judge Dugan's purported *factual* finding that Lawlor served as independent counsel to Wylette Speed, Petitioner does not impugn in its Exceptions the hearing judge's findings of fact. Petitioner focuses its exception on the *legal* conclusions drawn by the hearing judge that Lawlor actually was independent of Respondent when he consulted with Mrs. Speed about her will. Based on our

independent review of the record and findings of fact, we conclude that Respondent violated MRPC 1.8(c) and 8.4(d).

## A. *MRPC 1.8(c)*

The version of MRPC 1.8(c) in effect at the time of the conduct giving rise to the alleged violations required that a client be represented by independent counsel with respect to any substantial bequest or gift the client sought to confer on a lawyer who was preparing the will containing the gift. *See supra* note 1. Because we disagree with the hearing judge's conclusion that Lawlor sufficiently was possessed of the appearance of independence in his role of consulting with Wylette Speed as to the residuary bequest to Respondent, we shall sustain Petitioner's exception to the conclusion that MRPC 1.8(c) was not violated.

Petitioner relies principally on our interpretation of MRPC 1.8(c) expressed in *Attorney Grievance Comm'n v. Stein,* 373 Md. 531, 819 A.2d 372 (2003).[8] In *Stein,* we said that "[t]he independent counsel required by the Rule must be truly independent—the requirement of the Rule may not be satisfied by consultation with an attorney who is a partner of, *shares space with,* or is a close associate of the attorney-drafter." 373 Md. at 537–38, 819 A.2d at 376 (emphasis added). Petitioner, building on this language, argues that an attorney who shares space with the attorney-drafter of the will should not qualify as independent counsel to the donor client. In this regard, Bar Counsel reminds us of the office suite, conference room, and receptionist shared by Lawlor and Respondent. As a result of this "critical mass" of shared space and resources, Petitioner contends that, under *Stein,* it should be clear that Lawlor should not have been perceived as sufficiently independent of Respondent for the purpose of the Rule.

---

**8.** The language of MRPC 1.8(c) at issue in *Stein* is the same as applies in the present case.

■ Respondent cries foul at Bar Counsel's reliance on *Stein* as an unfair retrospective application of law. *Stein* was filed in 2003, approximately nine years after the series of events unfolded that are the factual predicate of the instant disciplinary action. We are unpersuaded by Respondent's "retrospectivity" argument.

■ We stated previously that, when setting forth and applying the law with regard to the interpretation of a statute or rule in a certain case, the pronouncement of the law offered in that case is viewed generally as what has always been the law, albeit unannounced until that case. *Am. Trucking Ass'ns, Inc. v. Goldstein*, 312 Md. 583, 591, 541 A.2d 955, 958 (1988) ("In the overwhelming majority of cases, a judicial decision sets forth and applies the rule of law that existed both before and after the date of the decision."). Because the interpretation given in *Stein* had been the law, its application to facts arising before the interpretation was articulated is a proper and fair retrospective application of the law. A retrospective application of the law, on the other hand, may be improper or unfair where "a court overrules a prior interpretation of a constitutional or statutory provision, and renders a new interpretation of the provision." *Goldstein*, 312 Md. at 591, 541 A.2d at 959. This is otherwise known as a "clear break," where a completely new interpretation of a rule replaces an older, well-established interpretation of that rule. *Warrick v. State*, 108 Md.App. 108, 113, 671 A.2d 51, 53 (1996) (citing *Griffith v. Kentucky*, 479 U.S. 314, 324–25, 107 S.Ct. 708, 714, 93 L.Ed.2d 649 (1987)).

It is clear to us that no "clear break" occurred when *Stein* announced this Court's interpretation of MRPC 1.8(c) to require independent counsel not be partners of, share space with, or be close associates of the attorney drafting a will in which he is a substantial beneficiary. There was no departure from a widely-held prior interpretation of the Rule. Rather, *Stein* set forth an interpretation of the independent counsel requirement in MRPC 1.8(c), based on its language and intent. *Stein's* interpretation of the Rule does not become a "clear

break" simply because it was rendered upon a set of facts not yet encountered by an appellate court until that time. *See Goldstein,* 312 Md. at 591, 541 A.2d at 959 (quoting *Potts v. State,* 300 Md. 567, 577, 479 A.2d 1335, 1341 (1984)) ("In this usual situation, 'where a decision has applied settled precedent to new and different factual situations, the decision always applies retroactively.' ").

Respondent also argues that the facts in *Stein* are readily distinguishable from those in the present case. Be that as it may, *Stein's* legal analysis and interpretation of MRPC 1.8(c), which is the only portion of *Stein* relied upon by this Court in the case now before us, was not necessarily fact-driven. The legal interpretation of "independent counsel" offered in *Stein* focused on the Rule, rather than the facts that gave rise to the need in *Stein* to interpret the Rule. For the same reason that retrospective application of *Stein* here is not an improper one, the factual distinctions between *Stein* and this case are immaterial to our legal analysis of what the Rule requires. Accordingly, we are unmoved at this juncture by the factual distinctions urged by Respondent, though these distinctions will return to play an important role in our consideration of what sanction is appropriate.

It is evident from the record that Respondent endeavored to comply with MRPC 1.8(c). Judge Dugan found that Respondent recognized the ethical quandary created by Wylette Speed's desire to include a bequest to him in the will she asked that he prepare. Respondent even expressed to Wylette his wariness about preparing a will containing a gift to him and suggested finding another attorney to draft the will as she wanted it. The record reflects that Wylette responded by asking Respondent to find another attorney for her because she was not in a position to do so. Respondent's misstep, in attempting to comply with MRPC 1.8(c), came when he recruited a friend and office suite co-tenant, Richard Lawlor, to fulfill the role as independent counsel to Mrs. Speed. While that choice may have been blessed with the virtues of convenience and competence on Lawlor's part, it lacked consideration of the nuance of how the perception of closeness

might be viewed as undermining the independence requirement of the Rule. That is not to say that, on this record, Mr. Lawlor failed to discharge properly his duty as Mrs. Speed's special counsel. The record reflects that Lawlor consulted with Wylette in a manner in which independent counsel would be expected to do. That notwithstanding, Respondent's choice for independent counsel may not have appeared sufficiently independent to a member of the public aware of the connection between Respondent and Lawlor and knowing the other material background facts.

■ Accordingly, we believe that Respondent sacrificed adherence to the spirit of MRPC 1.8(c) in his nonetheless good faith attempt to satisfy the letter of the Rule. *See Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 254–55, 760 A.2d 1108, 1119 (2000). The Maryland Rules of Professional Conduct sometimes call upon attorneys to make nuanced ethical determinations, and, as a result, there may be occasions where attorneys expose themselves to some ethical second-guessing, even in their honest efforts to honor their known ethical duties. We cannot look away from a violation of the Rule at the expense of the principles and spirit undergirding it solely because an attorney made a good faith effort at compliance.[9] The Preamble to the MRPC, entitled "A Lawyer's Responsibilities," touches on this concern: "The Rules of Professional Conduct prescribe terms for resolving [ethical] conflicts. Within the framework of these Rules many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying these Rules." We conclude that Respondent failed to apply properly all of the principles underlying MRPC 1.8(c) and created the potential for the appearance of impropriety, in a situation where he stood to benefit significantly by his client's intended

---

**9.** The presence of an attorney's good faith, for analysis of whether a violation of the MRPC occurred, is distinct from the consideration of good faith as a matter of mitigation when the Court determines the appropriate sanction. *See Attorney Grievance Comm'n v. Lee,* 393 Md. 546, 564, 903 A.2d 895, 906 (2006).

gift, by retaining, as counsel, an attorney with whom he shared office space, professional resources, and a personal relationship. A reasonable member of the public could well look askance at such an arrangement and suspect that collusion *could* have taken place.[10] This appearance of impropriety is enough to constitute a violation of the Rule.[11] *Attorney Grievance Comm'n v. Hines*, 366 Md. 277, 293, 783 A.2d 656, 665 (2001) (quoting *Attorney Grievance Comm'n v. Kent*, 337 Md. 361, 382, 653 A.2d 909, 919 (1995)) ("In order to maintain public confidence in the legal system, lawyers must avoid not only actual acts of misconduct but even the type of behavior that can suggest misconduct."). Accordingly, we sustain Petitioner's exception to Judge Dugan's recommended conclusion that Respondent did not violate MRPC 1.8(c).

---

**10.** We hasten to add that nothing in the record indicates that any collusion, in fact, occurred between Respondent and Lawlor. For purposes of finding a violation of MRPC 1.8(c), however, the objective perception by a member of the public, the protection of whom these Rules are created and enforced, *Attorney Grievance Comm'n v. Mba–Jonas*, 397 Md. 690, 702, 919 A.2d 669, 677 (2007), is the proper vantage point from which to consider whether an actionable appearance of impropriety occurred.

**11.** Contrary to Respondent's assertion at oral argument, public perception of the appearance of impropriety has always been a matter of concern for attorney discipline in Maryland. *See, e.g., Attorney Grievance Comm'n v. James*, 340 Md. 318, 326, 666 A.2d 1246, 1250 (1995) (affirming a violation of MRPC 5.5, relying, in part, on a Maryland State Bar Association Committee on Ethics informal opinion discussing an arrangement that "would give to the public the appearance of impropriety."); *Peat, Marwick, Mitchell & Co. v. Los Angeles Rams Football Co.*, 284 Md. 86, 95, 394 A.2d 801, 806 (1978) (applying Canon 9 of the Code of Professional Responsibility, which prohibited "the appearance of impropriety resulting in a weakening of public confidence in the judicial system"); *see also Attorney Grievance Comm'n v. Cockrell*, 304 Md. 379, 381 n. 4, 499 A.2d 928, 929 n. 4 (1985); *Attorney Grievance Comm'n v. Bailey*, 285 Md. 631, 641–42, 403 A.2d 1261, 1267 (1979); STANARD T. KLINEFELTER & CRISTIN C. LAMBROS, 2 PRACTICE MANUAL FOR THE MARYLAND LAWYER § 13.33 (3d ed.2005) (advising attorneys to be cautious in preparing a will to which they are a beneficiary for fear of the appearance of impropriety). Were we to stop caring what the public perception of attorneys may be, we succumb to all of the mean-spirited lawyer jokes and the largely unjustified rancor behind many of them.

### B. MRPC 8.4(d)

■ Respondent's actions, which created an appearance of impropriety, necessarily constitute "conduct that is prejudicial to the administration of justice." MRPC 8.4(d). We said in *Stein:*

> We view the violation [of MRPC 1.8(c) ] as a most serious one. There are many potential dangers inherent in an attorney drafting a will in which he or she is the beneficiary. . . . [Among some of the dangers are] *the undermining of the public trust and confidence in the legal profession*
> . . . .

373 Md. at 538, 819 A.2d at 376 (emphasis added). We have stated on numerous occasions that when the public's confidence in the judicial system is harmed by the occasion of attorneys violating their professional responsibilities, the administration of justice is harmed equally. *Attorney Grievance Comm'n v. Kapoor,* 391 Md. 505, 532, 894 A.2d 502, 518 (2006); *Attorney Grievance Comm'n v. Reinhardt,* 391 Md. 209, 222, 892 A.2d 533, 540 (2006) ("Behavior that may seriously impair public confidence in the entire profession, without extenuating circumstances, may be conduct prejudicial to the administration of justice."); *Attorney Grievance Comm'n v. Painter,* 356 Md. 293, 306, 739 A.2d 24, 32 (1999) (holding that MRPC 8.4(d) is violated when an attorney engages in conduct which undermines public confidence in the legal profession); *Attorney Grievance Comm'n v. Richardson,* 350 Md. 354, 368, 712 A.2d 525, 532 (1998) ("We have . . . recognized that conduct that impacts on the image or the perception of the courts or the legal profession, and that engenders disrespect for the courts and for the legal profession may be prejudicial to the administration of justice. Lawyers are officers of the court and their conduct must be assessed in that light.") (citation omitted); *see also Rheb v. Bar Ass'n of Baltimore City,* 186 Md. 200, 205, 46 A.2d 289, 291 (1946). Specifically, violations of MRPC 1.8(c) are detrimental to public confidence in the legal system. *See Attorney Grievance Comm'n v. Lanocha,* 392 Md. 234, 244, 896 A.2d 996, 1002 (2006) (citing *Stein,* 373 Md. at 543, 819 A.2d at 379).

Accordingly, we sustain Petitioner's exception to Judge Dugan's conclusion that there was no violation of MRPC 8.4(d).

## V. Sanction

Maryland Rule 16–759(c) provides that "[t]he Court of Appeals may order (1) disbarment, (2) suspension, (3) reprimand, (4) inactive status, (5) dismissal of the disciplinary or remedial action, or (6) a remand for further proceedings." Petitioner posits that Respondent's action are substantially the same as those in *Stein,* and recommends accordingly that Respondent be suspended indefinitely from the practice of law. While Respondent argues that *Stein* is distinguishable, he has not offered any recommendations as to an appropriate sanction. Instead, he urges dismissal of the Petition.

We concluded that Respondent violated MRPC 1.8(c) and 8.4(d). "The sanction for a violation of the Maryland Rules of Professional Conduct depends on the facts and circumstances of each case, including a consideration of any mitigating factors." *Reinhardt,* 391 Md. at 223, 892 A.2d at 541 (citing *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 375, 872 A.2d 693, 713 (2005)); *Attorney Grievance Comm'n v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000) ("In addition to the facts underlying the misconduct, the attorney's prior grievance history, as well as any mitigating factors are part of the equation.").

We stated previously that

[t]he primary purpose in imposing discipline on an attorney for violation of the Rules of Professional Conduct is not to punish the lawyer, but rather to protect the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). Disciplinary proceedings also are aimed at deterring other lawyers from engaging in similar conduct. [*Powell,* 369 Md. at 474–75, 800 A.2d at 789]. The purpose, however, "is not to punish the lawyer or to provide a basis upon which to impose civil liability." *Attorney Grievance*

*Comm'n v. Monfried,* 368 Md. 373, 394, 794 A.2d 92, 104 (2002). When this Court imposes a sanction, it protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 96, 753 A.2d 17, 38 (2000).

*Stein,* 373 Md. at 537, 819 A.2d at 375. These jurisprudential principles of attorney discipline are well-settled in Maryland. *See, e.g., Attorney Grievance Comm'n v. Gallagher,* 371 Md. 673, 713–14, 810 A.2d 996, 1020 (2002); *Atkinson,* 357 Md. at 656, 745 A.2d at 1092; *Attorney Grievance Comm'n v. Hess,* 352 Md. 438, 453, 722 A.2d 905, 913 (1999). We generally impose sanctions which we believe are most appropriate and befitting of the nature and gravity of the violations, together with the intent on the part of the violating attorney. *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 70–71, 839 A.2d, 718, 724 (2003); *Stein,* 373 Md. at 537, 819 A.2d at 375 ("[T]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.") (quoting *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997)); *see also Attorney Grievance Comm'n v. Briscoe,* 357 Md. 554, 568, 745 A.2d 1037, 1044 (2000) ("The gravity of misconduct . . . is determined largely by the lawyer's conduct.") (citing *Attorney Grievance Comm'n v. Milliken,* 348 Md. 486, 519, 704 A.2d 1225, 1241 (1998)).

▪▪▪▪ With this in mind, we do not believe that the sanction imposed in *Stein* is commensurate with the actions of Respondent. In *Stein,* the conduct of the attorney was much more egregious than that of Respondent.[12] Stein suggested to

---

12. Ordinarily, a violation of MRPC 1.8(c) evokes consideration of another possible sanction. In *Attorney Grievance Commission v. Stein,* 373 Md. 531, 819 A.2d 372 (2003), several members of this Court argued forcefully for the requirement of disgorgement of a testamentary gift improperly created by an attorney to whom it would be granted. 373 Md. at 546–49, 819 A.2d at 381–82 (Wilner, J., dissenting, joined by Harrell, J.); *Stein,* 373 Md. at 545, 819 A.2d at 380 (Cathell, J., concurring) (agreeing essentially with the notion of disgorgement

his client the substantial gift to himself and only made a

whether voluntary or involuntary). Disgorgement as a sanction in the appropriate case should not be forgotten, although the present case is not that case.

After considering two Ohio cases, *Disciplinary Counsel v. Galinas*, 76 Ohio St.3d 87, 666 N.E.2d 1083, 1087 (1996) (Stratton, J., dissenting) and *Mahoning County Bar Ass'n v. Theofilos*, 36 Ohio St.3d 43, 521 N.E.2d 797, 799 (1988) (Holmes, J. dissenting), in which disgorgement was advocated by dissenting members of those courts, the majority in *Stein* concluded that such a measure was unnecessary in light of another forum in which an equivalent sanction could be achieved, namely a will caveat Further, in quoting from the preamble to the MRPC, the majority in *Stein* hinted that disgorgement of an improper testamentary gift too closely resembled a form of civil liability not contemplated by the Rules. The MRPC, however, permits other similar types of pecuniary reparation, namely restitution of monies belonging rightfully to a client. Maryland Rules 16–736(c)(3)(B) (listing "restitution of unearned or excessive fees in a stipulated amount" as a possible term for a Conditional Diversion Agreement); 17–760(h)(5) (providing that one possible condition of an order imposing discipline is for the attorney to "make restitution to any client of any sum found to be due to the client"); *see also Attorney Grievance Comm'n v. Sachse*, 345 Md. 578, 594, 693 A.2d 806, 814 (1997) (ordering restitution of trust funds be made by a conflicted attorney-trustee who permitted the improper distribution of those funds).

We note also that conditions may be added to sanctions imposed in disciplinary matters. Md. Rule 16–721(c) (citing Md. Rule 16–760). Specifically, if the Court orders a reprimand, any number often different conditions are within the realm of contemplation. Md. Rule 16–760(b), (h). In addition to satisfying any judgment or reimbursing the Client Protection Fund, Md. Rule 16–760(h)(4), and making restitution, Md. Rule 16–760(h)(5), the Rule provides that the Court may order an attorney to "take any other corrective action that may be reasonable and appropriate." Md. Rule 16–760(h)(10). In the same way that restitution is an appropriate sanction to remedy excessive fees, depleted trusts, or other monies owed to a client, disgorgement of a testamentary gift improperly bequested to an attorney is an appropriate sanction for the violation of MRPC 1.8(c). The rationale for this type of sanction was addressed well by Judge Wilner in his dissent in *Stein*. 373 Md. at 548, 819 A.2d at 382. At least one other state, Florida, has embraced the same logic of deterrence by disgorging ill-gotten gains. *The Florida Bar v. St. Louis*, 967 So.2d 108 (Fla.2007) (applying Rule Regulating the Florida Bar 3–5.1(h), which provides for forfeiture of fees made impermissible by the Rules, where restitution was inappropriate); *The Florida Bar v. Rodriguez*, 959 So.2d 150 (Fla. 2007) (concluding that "permitting Rodriguez to retain his ill-gotten gains would fail to provide a deterrent and could actually encourage misconduct by greedy lawyers."). In fact, we have once before considered requiring an attorney to disclaim a bequest. *Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 182, 821 A.2d 414, 429 (2003).

transparently superficial attempt at obtaining counsel, independence aside, for his client-donor by recommending a member of his own firm, who clearly would be conflicted. *Stein,* 373 Md. at 543, 819 A.2d at 379. When his client-donor did not consult with the attorney he recommended, Stein disregarded his obligation to have his client meet with independent counsel as to the gift and proceeded to prepare the will containing a substantial gift to himself. *Id.* As we have noted previously, Respondent recognized, in large measure, the ethical issue at hand and made a good faith effort to comply with the letter of MRPC 1.8(c).[13] He engaged the services of an experienced and capable friend whom he had every reason to trust would serve as adequate counsel to Mrs. Speed, who did not want to and/or was not capable of retaining another attorney on her own. Respondent ran afoul of MRPC 1.8(c), however, when he failed to perceive the appearance of impropriety of selecting such a close friend with whom he shared office space and other professional resources. Thus, the underlying principle on which the independent counsel requirement rests was not honored entirely. With a client in a vulnerable and dependent state, *Stein,* 373 Md. at 538–39, 819 A.2d at 376 (citing *Disciplinary Counsel v. Galinas,* 76 Ohio St.3d 87, 666 N.E.2d 1083, 1086 (1996) (discussing the hypersensitivity towards ethical matters attorneys must exercise when dealing with clients "contemplating [their] own mortality")), Respondent should have located a similarly qualified independent counsel that would not have raised an appearance of impropriety.

In examining other mitigating and aggravating factors, *Stolarz,* 379 Md. at 403, 842 A.2d at 51, we note that Respondent's situation does not demonstrate any discernible aggravating factors. To the contrary, the record reflects that Respondent does not have any prior disciplinary record. He produced uncontroverted witnesses as to his exceptional char-

---

**13.** As indicated previously, *supra* note 9, the presence of good faith on the part of an attorney is a relevant consideration for the purpose of imposing a sanction. *Lee,* 393 Md. at 564, 903 A.2d at 906.

acter. We conclude also that it seems highly unlikely that Respondent will repeat the actions in a similar situation as occurred in this case.

In *Atty. Griev. Comm'n v. Brooke,* 374 Md. 155, 821 A.2d 414 (2003), misconduct by the errant attorney resulted in an indefinite suspension for violation of MRPC 1.8(c) and 8.4(d). Brooke, who professed to be unaware of the requirements of MRPC 1.8(c) at the time, evinced a seeming indifference to the preparation of his client's will by directing his non-lawyer assistant to prepare for the client a will in which the attorney was to be a legatee. Even though, as in *Stein,* the attorney was ignorant of the requirements of Rule 1.8(c), committed only a single act of misconduct, lacked a prior disciplinary record, and was found not to have exerted any undue influence over the testator with regard to the relevant bequest, the Court concluded that indefinite suspension was the appropriate sanction. The principal distinction between the facts of *Brooke* and the present case is that Brooke took no affirmative actions whatsoever that could be construed reasonably as honoring to any extent the letter or the spirit of Rule 1.8(c).

The attorney in *Attorney Grievance Comm'n v. Lanocha,* 392 Md. 234, 896 A.2d 996 (2006), as in *Stein* and *Brooke* "had no knowledge whatsoever of Rule [1.8(c)] or its existence or content" when he drafted a client's will that contained a substantial bequest to the attorney's daughter. *Id.* at 240, 896 A.2d at 1000 (alteration in original). In *Lanocha,* the attorney nonetheless advised his client to seek other counsel in connection with preparation and execution of the will, but she declined. *Id.* Moreover, he did not suggest the gift to his daughter be included in the will. *Id.* at 245, 896 A.2d at 1003.

Lanocha defended against a finding of a violation of Rule 1.8(c) principally on the basis that the gift to his daughter was dissimilar to *Stein* and *Brooke* where the beneficiaries were the attorneys who drafted the wills. *Id.* at 243, 896 A.2d at 1002. The Majority opinion in *Lanocha,* while finding insufficient merit in this distinction for purposes of determining whether the Rule was violated (*id.* at 243–244, 896 A.2d at

1001–1002), nonetheless seemingly relied on that consideration to conclude that a reprimand was the appropriate sanction in that case. *Id.* at 245–246, 896 A.2d at 1003–1004.

The present case, in our view, "plumbs the depth of the shallow end of the sanction pool" among the modern cases considering violations of MRPC 1.8(c) and 8.4(d). *See Stolarz,* 379 Md. at 403, 842 A.2d at 51. Unlike the respondent's in *Stein, Brooke* and *Lanocha,* Saridakis was aware generally of the requirements of Rule 1.8(c) and made a good faith effort to comply. This situation, when combined with his otherwise unblemished disciplinary record, the unlikelihood of repetition of the misconduct,[14] the much more egregious misconduct in *Stein* and *Brooke,* and his otherwise exemplary good character, leads us to believe that a *Stolarz*-like disposition would be appropriate in this case. *See Stolarz,* 379 Md. at 402–406, 842 A.2d at 50–52. Thus, under Rule 16–759(c), we remand this case to the Commission for it to dismiss the petition, but with a warning to Saridakis. *See* Rule 16–735(b).[15]

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUMMARY JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANTHONY A. SARIDAKIS.**

GREENE and WILNER, JJ., dissent.

Dissenting Opinion by WILNER, J., which GREENE, J., joins.

In 1994, respondent prepared a Will for a client under which, at the client's express direction and without any solici-

---

**14.** We rely not just upon our perception of Saridakis's representations to this effect, but also on the intervening change in the language of the Rule. *See* FN. 1, *supra.*

**15.** Should Saridakis reject such a disposition, we shall consider anew a different, appropriate sanction.

tation from respondent, he became a substantial legatee. The Court acknowledges that (1) there is no evidence in this record that respondent, or anyone on his behalf, exercised any undue influence on the testatrix with respect to the Will, and, indeed, when faced with the client's direction to include himself as a beneficiary, respondent attempted to dissuade her, (2) upon her insistence, he recognized the need for the client to have independent legal advice in the matter and so advised her, (3) when she responded that she did not know any other lawyers and had no ability to seek out one, he obtained for her a qualified lawyer (Lawlor) with whom he had no personal, on-going professional, or business relationship beyond the fact that the two shared a conference room and receptionist in their office suite, (4) there was no collusion of any kind between respondent and Lawlor, and (5) Lawlor met with the client, acted as her counsel, and gave what the trial judge who heard all of the evidence regarded as true independent legal advice.

Nonetheless, the Court finds that respondent violated the versions of MRPC 1.8(c) and 8.4(d) in effect in 1994 because respondent was not sufficiently prescient to anticipate this Court's unique pronouncement *nine years later* in *Attorney Grievance v. Stein,* 373 Md. 531, 819 A.2d 372 (2003), that, as a matter of law and notwithstanding the facts, a lawyer cannot, in these circumstances, be regarded as giving independent legal advice if he or she shares office space with the respondent. The Court, at least tacitly, recognizes the gross unfairness of that determination by sending the case back to Bar Counsel so that *he* can dismiss it. That, to me, is a classic "cop-out" and wholly inappropriate. The Court pronounces publicly that respondent has been guilty of serious violations of the Rules of Professional Responsibility, which will tar him for the rest of his career, and yet directs Bar Counsel quietly to dismiss the case.

With respect, I dissent. If, as the Court holds, respondent violated MRPC 1.8(c) and 8.4(d) because he should have known that it was impermissible to obtain a lawyer with whom he shared office space to give independent legal advice to his

client, he should be punished for that misconduct. If the Court is right that respondent should somehow have known that his conduct was unlawful and prejudicial to the administration of justice, the petition should not be dismissed, with or without a warning. He should be sanctioned as other lawyers have been for that very kind of violation. The problem is that the Court is dreadfully wrong in finding those violations; that is the unacceptable unfairness.

The version of MRPC 1.8(c) in effect in 1994 provided, in relevant part, that

"A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer ... any substantial gift from a client, including a testamentary gift, except where:

(1) the client is related to the donee; or

(2) the client is represented by independent counsel in connection with the gift."

That version of MRPC 1.8(c) was adopted by the Court effective January, 1987. There was no counterpart to the Rule in the previous Disciplinary Rules, although former Ethical Consideration 5–5 stated that "if a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that the client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances." Unquestionably, respondent satisfied *that* requirement. He *did* urge his client to obtain such advice.

There was nothing in the previous Disciplinary Rule or Ethical Consideration and there was nothing in MRPC 1.8(c) or any comment to it that purported to define "disinterested advice," "independent person," or "independent counsel," or that stated any specific criteria for determining who might or might not qualify. Nor, in 1994, was there any judicial gloss from this Court in that regard. We had not yet construed the Rule. Lawyers were left to use their best, honest judgment.

Respondent had represented the client, Ms. Speed, since 1983, and he became, in addition to her lawyer, a trusted advisor and friend. Ms. Speed had no children and, after the

death of her husband, no close relatives other than a sister in ill health in Baltimore and a niece in Ohio. Respondent had drafted several Wills for Ms. Speed and a power of attorney in which she named him as her health care agent. So far as this record reveals, all of this was quite proper. After Ms. Speed suffered a stroke in 1992 and had to be placed in a nursing home, respondent visited her frequently, continued to manage her affairs, and, as the Court notes, served as her "family member" at meetings with the nursing home staff.

In 1993, Ms. Speed asked respondent to prepare a new Will in which he, Ms. Speed's sister, her former and current trust officers, and her godson would be named as residuary legatees. She apparently had no desire to name her niece in Ohio as a beneficiary. Respondent made clear to Ms. Speed that he was not comfortable with any bequest to him and asked that she think about it some more. When, several months later, she repeated her request that he prepare the Will as directed, he again expressed discomfort at drafting a Will in which he would be a beneficiary. She insisted, whereupon he told her that she would need to consult another attorney. She responded that she did not know any other attorneys and was not in a position to find one. Respondent thereupon drafted the Will as directed but, before presenting it to her for her signature, he consulted Mr. Lawlor, an attorney whom he knew and respected, explained the situation and his concern, and asked if Lawlor would review the Will with her. Respondent and Lawlor shared a receptionist and a conference room but had entirely separate offices and practices and no other personal, professional, or business relationship. The trial judge found, on essentially undisputed evidence, that "the configuration within the suite was not substantially different than if Mr. Lawlor occupied an office next door. With the independent practices each firm had, there was no working relationship between them."

Mr. Lawlor visited Ms. Speed at the nursing home. Although respondent introduced him to her and explained that Lawlor would go over the Will with her, respondent left the room when that occurred. The trial judge found as a fact that

Lawlor "acted as independent counsel" to Ms. Speed. The judge concluded that Lawlor "proceeded to have a general conversation with her which allowed him to form an opinion that she was competent to make and execute a will" and that "[h]e followed by going over her will in detail and confirming her donative intent to make the included bequest." Lawlor opened a file and charged Ms. Speed for his services. Ms. Speed executed a codicil to the Will in 1994 that did not change any of the bequests, and she died in April, 2000.

When the relevant events here occurred, in 1994, no State in the country, including Maryland, had adopted the view that, as a matter of law, the mere sharing of office space with the client's attorney precludes an attorney from being considered as independent counsel for purposes of MRPC 1.8(c). Indeed, so far as I can determine, there had, at the time, been only one reported attorney discipline case in which the sharing of office space was even mentioned in this context—*People v. Berge*, 620 P.2d 23 (Colo.1980).

In *Berge*, an attorney was charged, among other things, with exerting undue influence on a client in connection with the preparation of a Will in which the attorney was named as a beneficiary and failing to adopt appropriate safeguards to avoid undue influence and the appearance of impropriety in respect to the drafting and execution of the Will. Berge had prepared a Will for the client in 1967 in which he was not named as a beneficiary. In 1968, the client asked Berge to prepare a new Will in which Berge *would* be a beneficiary. Recognizing the conflict, Berge declined to prepare the Will and recommended two other attorneys. The client rejected those recommendations and asked if there was someone in Berge's office who could draft the Will. Berge suggested an attorney (Smith) whom he described as independent, but who rented office space from Berge's law firm, shared with the firm all office expenses, including secretarial salaries and telephone expenses, on a proportional basis, and had a close personal relationship with the members of the firm.

Berge informed Smith that his client wanted to make Berge a beneficiary and asked Smith to prepare the Will. Smith met with the client and went over a marked-up copy of the existing Will. They did not discuss the client's family situation, the tax consequences of the proposed new Will, or any other factors that might have affected the Will. The conference took between ten and fifteen minutes, and Smith gave the client "no substantive advice." *Id.* at 25. In contrast to the old Will, the new one left Berge 47% of the residuary estate and contained an *in terrorem* clause disinheriting any beneficiary who challenged the Will. The client returned to Smith's office several days later and signed the Will in Berge's presence, with Berge acting as a witness.

The relevant standard in Colorado with respect to this conduct was Ethical Consideration 5.5, which, as noted, allowed a lawyer to accept a gift from a client but before doing so was supposed to urge that the client secure disinterested advice from an independent, competent person who is cognizant of the relevant circumstances and that "[o]ther than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client." The Colorado court concluded that Berge's conduct did not satisfy that standard. It noted:

"The close relationship of the respondent and his firm with Smith is inconsistent with the appearance of independence. *Much more importantly,* the manner in which Smith handled this matter establishes that *he was not independent in fact.* His inquiry into the facts essential to proper representation was minimal. He did not inquire into [the client's] family situation, the size of his estate, or any other facts essential to proper representation. He gave [the client] no substantive advice, but acted only as a scrivener in making changes noted on a copy of an earlier will ... He never billed [the client] even though he had no expectation of becoming attorney for the estate. Smith candidly admitted that his services in the matter were performed as a favor to the respondent.... The way he treated this matter testifies

eloquently to the close relationship between the respondent and Smith and to Smith's lack of independence."

*Id.* at 27 (Emphasis added).

That, essentially, was the legal landscape when respondent prepared the Will for Ms. Speed. Every court that had considered the issue, whether in the context of an attack on the Will for undue influence or in an attorney grievance context, looked at all of the underlying facts—the overall connection between the two lawyers and the actual conduct of the second attorney—in deciding whether the first attorney's conduct was proper. *See,* for example, *In re Lobb's Will,* 177 Or. 162, 160 P.2d 295 (1945); *In re Moses' Will,* 227 So.2d 829 (Miss.1969); *State v. Beaudry,* 53 Wis.2d 148, 191 N.W.2d 842 (1972). None had purported to hold that the sharing of office space alone precluded an otherwise independent attorney from acting as such and giving independent advice.

What dooms respondent, in the Court's eyes, is this Court's Opinion in *Attorney Grievance v. Stein, supra,* 373 Md. 531, 819 A.2d 372, filed nine years after the relevant events in this case. In that case, when his client indicated a desire to have a new Will prepared under which Stein would be a beneficiary, Stein suggested that the client speak with another attorney *in his law firm.* He never suggested that she consult independent counsel, and she never did so. The client did not contact the suggested lawyer, or any other lawyer, and Stein prepared the Will, under which he received one-third of the residuary estate. In sustaining a finding that Stein had violated MRPC 1.8(c)—the same version of the Rule that existed in 1994—the Court noted:

> "Respondent drafted a will for his client in which he stood to inherit a substantial gift. He was not related to the client, and the client did not consult with independent counsel. The independent counsel required by the Rule must be truly independent—the requirement of the Rule may not be satisfied by consultation with an attorney who is a partner of, *shares space with,* or is a close associate of the attorney-drafter. *See, e.g., People v. Berge,* 620 P.2d 23, 27

(Colo.1980); *State v. Beaudry,* 53 Wis.2d 148, 191 N.W.2d 842, 844–45(1971)."

(Emphasis added).

That is the first time, to my knowledge, that any court has held, seemingly as a matter of law, that a lawyer who merely shares office space with the client's attorney cannot be regarded as independent for purposes of MRPC 1.8(c). The uniqueness of that statement is remarkable for two reasons. One, it clearly was *dicta.* As noted, the client did not consult with *any* other lawyer before signing the Will drafted by Stein, so the issue of whether a lawyer sharing space could render independent advice was simply not presented. Second, neither *Berge* nor *Beaudry*—the two cases cited by the Court—support the conclusion that space-sharing is an automatic disqualification. *Berge* has already been discussed. The issue there was *not* space-sharing but rather the overall relationship between Smith and Berge and the fact that Smith never even purported to give independent advice to Berge's client. *Beaudry* is even less on point.

*Beaudry* was founded on two earlier Wisconsin cases—*State v. Horan,* 21 Wis.2d 66, 123 N.W.2d 488 (1963) *and State v. Collentine,* 39 Wis.2d 325, 159 N.W.2d 50 (1968). At the time of *Horan,* there was no Rule in Wisconsin governing the drawing of a Will by a lawyer for a client in which the lawyer was to be a beneficiary, and the commentators were in some disagreement as to whether, or under what circumstances, it was proper for a lawyer to undertake such work. Concerned about the lurking problem of undue influence, the *Horan* court concluded that "prudence requires that such a will be drawn by some other lawyer of the testator's own choosing so that any suspicion of undue influence is thereby avoided." *Id.* at 491. The court added a caveat, however—that a lawyer *could* draw a Will for a client in which the lawyer would be a beneficiary "after fully advising his client of the effect thereof and when he is justified in believing that there is or will be independent competent evidence which rebuts the inference [of undue influence]." *Id.* at 492.

In *Collentine,* the court disavowed that caveat and closed the loophole, concluding that:

"When a testator wishes to have his attorney draft a will in which that attorney is entitled to anything more than he would be at law, it is the absolute duty of the attorney to refuse to act. He has the responsibility of advising his client to consult another attorney if he wishes to pursue such a bequest."

*Collentine,* 159 N.W.2d at 53.

Under that approach, as the Wisconsin court acknowledged in *Beaudry,* a lawyer was forbidden to draft a Will for a client, even a close relative, if the lawyer or a member of the lawyer's family would receive a bequest greater than if the client died intestate. *See Beaudry,* 191 N.W.2d at 843. In *Beaudry,* the Will at issue was drafted after the decision in *Horan* but about two-and-a-half months before the decision in *Collentine.* Beaudry was not related to his client and would therefore have received nothing from her had she died intestate, so, under *Collentine,* he was precluded from drafting a Will for her that provided any bequest to him. When his client, who had suffered a stroke and was in a nursing home, insisted on making him a beneficiary, he told her that another attorney would have to draft the Will, and he asked whether she wanted him to find another attorney for her. She said that she did, and Beaudry found a young attorney, with limited experience, who had represented *him* in some minor matters. He explained to the attorney that the client wanted to disinherit her son and make Beaudry the principal beneficiary. He took the attorney and the attorney's secretary (who was also his sister), to the nursing home for the purpose of actually writing a Will, which the attorney did and had the client sign.

In a disciplinary action against Beaudry, the court concluded that the duty of an attorney who selects another attorney to draft a Will for a client is to select "as competent and as independent an attorney as the client would pick out," not a mere scrivener. *Beaudry,* 191 N.W.2d at 844. It was thus Beaudry's responsibility "to instruct [the other lawyer] he was

to act as an independent attorney for [the client] with no obligations to him and ascertain from her by specific inquiry what her intentions were, the natural objects of her bounty, the value of her property, and all other matters which would be pertinent to her testamentary capacity to make a will and her intentions for the disposition of her property." *Id.*

There was no office-sharing in *Beaudry.* The problem was the overall close relationship between the two attorneys and the manner in which the Will was drafted, presented, and executed.

I accept the statement in *Stein* relied on by the Court as the current controlling law in Maryland—a bright line that, from the date the Opinion was filed, lawyers were bound to heed. To apply that bright line to conduct that occurred nine years before it was painted, however, when neither the Rule itself nor any court in the country gave any hint of such a line, is wholly unfair. In concluding that *Stein* did not constitute a "clear break" with pre-existing law, the Court seems either to be ignoring the fact that no court in the country had previously even dealt with the issue, much less decided it, or to be resurrecting some notion of that "brooding omnipresence" lurking in the ether, waiting for the Court, in its discerning wisdom, to discover and bring it to earth, but which, even before that discovery and articulation, has constituted the law and thus governed human behavior from the time of Adam and Eve.

Such a notion—that the law was *always* there, even if never articulated by any court or legislature—is, at best, an unwarranted extension of natural law theory, and, while it may have influenced the intellectual meanderings of the Eighteenth Century judicial establishment, it has long, and for good reason, been replaced by the more realistic precept of legal positivism. As applied by the Court in this case, it would presume a clairvoyance that, for ordinary mortals, is wholly unreasonable and that I suspect even the current (and retired) members of this Court do not possess.

I would sustain the findings and conclusions of the trial judge and dismiss the complaint against Mr. Saridakis. If there is no violation of MRPC 1.8(c), there cannot, on this record, be any violation of MRPC 8.4(d). The Court should do the right thing and dismiss the petition itself, not publicly and permanently find respondent to be unethical for conduct that was not impermissible when committed and then direct Bar Counsel to dismiss the petition.

Judge GREENE joins this Dissent.